BEAVER EXCAVATING COMPANY, Appellant,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY et al., Appellees.

[Cite as *Beaver Excavating Co. v. United States Fid.
& Guar. Co.* (1998), 126 Ohio App.3d 9.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 97–JE–24.

Decided April 3, 1998.

*Monty L. Donohew* and *Todd A. Harpst;* and *William J. Ross,* for appellant.

*Thomas J. Keener,* for United States Fidelity and Guaranty Company.

*Ann E. Leo,* for Home Indemnity Company.

*Joseph P. Sontich,* for United States Fire Insurance Company.

Cox, Judge.

This timely appeal arises from a March 20, 1997 order of the Jefferson County Common Pleas Court pursuant to an action brought by plaintiff-appellant seeking a declaration of contractual rights under individual insurance policies issued by defendants-appellees, wherein the court, by granting summary judgment in favor of defendants-appellees, United States Fidelity & Guaranty Company, Home Indemnity Company, and United States Fire Insurance Company, and denying summary judgment against plaintiff-appellant, Beaver Excavating Company, determined that defendants-appellants had no contractual duty to defend appellant in the underlying breach-of-contract and tort lawsuits.

The rudimentary facts of this case are not in dispute. Appellant, Beaver Excavating Company, entered into a subcontracting agreement with general contractor Forest City Dillon, Inc. ("Forest City") on or about September 22, 1978 for the purpose of performing excavating and subgrade fill-work pursuant to a construction contract Forest City had entered into with the Steubenville Housing Corporation ("SHC"), an instrumentality of the Jefferson Metropolitan Housing Authority ("JMHA"). Prior to performance of its duties under the subcontracting agreement, appellant secured a comprehensive general liability insurance policy from appellee United States Fidelity & Guarantee Company ("USF&G"). Appellant maintained coverage with USF&G until November 12, 1982, when a new policy obtained from appellee Home Indemnity Company ("Home") became effective. Additionally, appellant secured an excess umbrella liability policy from appellee United States Fire Insurance Company ("USFIC"), effective November 1, 1982. Each of these policies, in one form or another, included a duty-to-defend provision.

Appellant used fill-slag purchased from International Mill Service, Inc. ("IMS") in performing its duties under the subcontracting agreement with Forest City. In a letter dated October 19, 1983, Forest City informed appellant that JMHA had informed it of settlement of the slab on grade at the subject construction site. Forest City's letter advised appellant that it was investigating the cause of the settlement, and that this letter "shall serve to put you and your bonding company on notice that the problems encountered at the site may have been caused by a deficiency in your workmanship and/or materials." Forest City also informed appellant that it would be notified when such investigations were to be conducted so as to permit appellant "to witness the results in the event the liability appears to be yours." It is not disputed that appellant did not inform any of the appellee-insurance carriers of this letter.

The record indicates that despite invitations by Forest City, appellant did not become involved in the investigation or any settlement negotiations with JMHA over the ensuing six or seven years.

In a letter dated May 14, 1990, Forest City informed appellant that the problems appeared "to be related to expansive fill placed under the building during construction," and that Forest City had entered into an agreement with JMHA to mitigate these problems. Forest City noted that "[i]n light of your company's involvement on this project and its potential liability for the problems experienced by the owner, we believe it would be in our mutual best interest to meet and discuss this situation as soon as possible." In response to appellant's declination of this proposal, Forest City sent appellant another letter, dated October 19, 1990, informing appellant that it intended to hold appellant "fully responsible for all damages it may incur" as a result of the repair program upon which it had agreed with JMHA. Forest City further noted that since its subcontracting agreement with appellant was governed by a fifteen-year statute of limitations, it intended to "hold off on litigation in order to see how the repairs hold up." It is not disputed that appellant did not inform any of the appellee-insurance carriers of this letter either.

Forest City filed a demand for arbitration against appellant on or about November 4, 1992. In response to this demand, appellant's counsel sent a letter dated January 15, 1993 to Willis Carroon Corp. of Ohio, appellant's insurance broker and agent for USF&G, Home, and USFIC for the purpose of receiving notice, demanding that USF&G assume defense of this matter. Appellant subsequently filed an action seeking to enjoin the arbitration proceedings, in which Forest City filed a counterclaim against appellant. In a letter dated August 31, 1993, USF&G notified appellant that it would investigate the matter under a reservation of rights.

On September 3, 1993, SHC and JMHA filed a complaint in the Jefferson County Common Pleas Court against Forest City, appellant, and IMS based upon the aforementioned property damage. In a second letter to Willis Carroon, dated October 7, 1993, appellant demanded that USFIC and Home provide coverage for the claims set forth in this action. Appellant formally notified USF&G of this complaint on October 17, 1993, in compliance with the terms of the policy issued by USF&G that such notice be provided within thirty days of a complaint being filed. In a letter dated March 18, 1994, USF&G formally notified appellant of its intent to deny coverage. Neither Home nor USFIC confirmed or denied liability insurance coverage for the property damage claims arising from the SHC/JMHA complaint.

On October 30, 1995 appellant filed a declaratory action against USF&G, Home, and USFIC, seeking a declaration that either or all of the aforementioned insurance companies had a duty to defend and indemnify appellant against the claims presented in the underlying lawsuits. The Jefferson County Common Pleas Court granted the summary judgment motions of appellees and denied

appellant's cross-motion for summary judgment, finding that there were "no genuine issues of material fact as to the dispositive issue of noncompliance by the Beaver Excavating Company with the prompt notice requirements and conditions in the liability insurance policies." Appellant filed this timely appeal April 21, 1997.

As appellant's first three assignments allege the same error against each of the three insurance carriers, and the fourth assignment of error is merely the reverse of the first three, they will be addressed jointly. Appellant's first three assignments of error allege:

"The Jefferson County Court of Common Pleas erred when it sustained defendant United States Fidelity & Guaranty Co.'s motion for summary judgment holding that the notice the insured provided was not timely as a matter of law notwithstanding that the undisputed evidence demonstrates that the insured notified its insurers immediately upon learning that property damage, the existence of which the insurer was previously aware, may have resulted from a covered occurrence.

"The Jefferson County Court of Common Pleas erred when it sustained defendant Home Insurance Company's motion for summary judgment holding that the notice the insured provided was not timely as a matter of law notwithstanding that the undisputed evidence demonstrates that the insured notified its insurers immediately upon learning that property damage, the existence of which the insurer was previously aware, may have resulted from a covered occurrence.

"The Jefferson County Court of Common Pleas erred when it sustained defendant United States Fire Insurance Company's motion for summary judgment holding that the notice the insured provided was not timely as a matter of law notwithstanding that the undisputed evidence demonstrates that the insured notified its insurers immediately upon learning that property damage, the existence of which the insurer was previously aware, may have resulted from a covered occurrence."

Appellant's fourth assignment of error alleges:

"The Jefferson County Court of Common Pleas erred when it denied plaintiff Beaver Excavating Company's motion for summary judgment on the grounds that it had not timely notified its insurers of a claim in that Beaver Excavating Company immediately notified its insurers once it learned that property damage may have resulted from a covered occurrence."

In reviewing a trial court's decision to grant summary judgment pursuant to Civ.R. 56, a court of appeals must conduct a *de novo* review of the record. *Renner v. Derin Acquisition Corp.* (1996), 111 Ohio App.3d 326, 676 N.E.2d 151. Civ.R. 56(C) states:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law."

As set forth by the Ohio Supreme Court in *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132:

"Under Civ.R. 56, summary judgment is proper when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of its claim." (Citations omitted.)

The Ohio Supreme Court in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274, held:

"* * * The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." (Emphasis *sic.*)

At issue in the present matter is whether the trial court, upon determining that appellees satisfied their burden of showing prejudice as a result of appellant's failure to provide prompt notice of an "occurrence," erred in concluding that such conduct amounted to a breach of appellant's contractual duty, thereby relieving appellees of their duty to defend appellant in the underlying contract and tort actions and entitling them to summary judgment as a matter of law.

Provisions of insurance contracts that are reasonably susceptible of more than one interpretation will be construed strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380. However, if a contract of insurance is clear and unambiguous, its interpretation is a question of law to be decided by the judge. *Leber v. Smith* (1994), 70 Ohio St.3d 548, 639 N.E.2d 1159.

USF&G's and Home's identical notice provisions provide in part:

"In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable."

The USF&G and Home policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." (Emphasis omitted.)

The USF&G and Home policies also define "property damage" as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

The notice provision included in USFIC's umbrella policy provides in part:

"Upon the happening of an occurrence reasonably likely to involve the company hereunder, written notice shall be given as soon as practicable to the company or any of its authorized agents. Such notice shall contain particulars sufficient to identify the insured and the fullest information obtainable at the time."

In *Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St.3d 159, 161, 532 N.E.2d 730, 732, the court held:

"* * * A provision in an insurance policy requiring 'prompt' notice to the insurer requires notice within a reasonable time in light of all the surrounding facts and circumstances. Unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary." (Citations omitted.)

The Ohio Supreme Court set forth a cogent discussion of the time period for notice requirements in *Lewis v. Trimble* (1997), 79 Ohio St.3d 231, 680 N.E.2d 1207. Though in a workers' compensation action, the Ohio Supreme Court's analysis of the notice requirement is appropriate to the issue herein. The Ohio Supreme Court noted:

" 'The time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness, and probable compensable character of his or her injury or disease.' [7] Larson [Workers' Compensation Law (1996)] at 15–206, Section 78.41(a).

"Since this standard is essentially one of due diligence, the focus properly rests upon the reasonableness of claimant's conduct under all the surrounding circum-

stances. This requires that all relevant factors bearing on the question of reasonableness be considered, including, but not limited to, the information available to claimant, his or her experience, education and intellectual functioning, and what he or she has been told or not told about the nature, seriousness, and probable compensable character of the condition." *Lewis, supra*, at 239, 680 N.E.2d at 1214.

■■ Initially, we conclude that the "as soon as practicable" requirement for notice, as set forth in the respective policies, is a "prompt" notice requirement. We next conclude that the plain meaning of the notice requirement language set forth in the respective policies can be construed only as a condition precedent to coverage.

■ It is indisputable that Forest City's October 19, 1983 letter made appellant aware of settling problems at the subject construction site. Reasonable minds cannot but conclude that such settling satisfied the definition of "property damage" as set forth above. Moreover, in consideration of the definition of "occurrence" as set forth in the respective policies, we find that reasonable minds could not but conclude that such settling was neither an "expected" nor "intended" result from appellant's standpoint. Therefore, we must conclude that upon appellant's being made aware of such an unexpected or unintended result, appellant's contractual duty to notify appellees "as soon as practicable" was triggered.

■ In reviewing all the surrounding circumstances of this matter in a light most favorable to appellant, and in consideration of the information available to appellant, their business experience, and what they had been told or not told about the nature, seriousness, and probable compensable nature of the condition, we cannot conclude that the trial court erred in determining that a nine-plus-year delay in notifying appellees was unreasonable under the specific circumstances presented.

■ Having determined that appellant's notice to appellees was unreasonable, we must determine whether the trial court erred in concluding that appellees suffered actual prejudice as a result of the unreasonable delay of notice. Though appellant would have the opportunity to rebut a *presumption* of prejudice resulting from an unreasonable delay, appellants would still be entitled to summary judgment if reasonable minds could only conclude that appellees suffered *actual* prejudice from the delay. *Helman v. Hartford Fire Ins. Co.* (1995), 105 Ohio App.3d 617, 664 N.E.2d 991. See, also, *Ruby, supra.*

In the present matter, a period of over nine years lapsed before the insured first attempted to notify an insurer of a problem that reasonable persons similarly situated could only have concluded was potentially or arguably within

policy coverage. Clearly, appellees were deprived of the ability to conduct their own investigations and precluded from resolving potentially covered damage claims in a timely and cost-efficient manner. We are convinced that but for appellant's unreasonable delay in providing notice to appellees, such options would have been available to appellees. Therefore, we cannot conclude that the trial court erred in determining that appellees suffered actual prejudice as a result of the unreasonable delay in notice.

For the reasons set forth, we find appellant's assignments of error to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

VUKOVICH and WAITE, JJ., concur.