RED HEAD BRASS, INC., Appellant,

v.

BUCKEYE UNION INSURANCE COMPANY, Appellee.

[Cite as *Red Head Brass, Inc. v. Buckeye Union Ins. Co.* (1999), 135 Ohio App.3d 616.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 98CA0051.

Decided Nov. 17, 1999.

618

*J. Douglas Drushal, Peggy J. Schmitz, Kirk T. Hartley* and *James W. Hutchison,* for appellant.

*Ralph F. Dublikar,* for appellee.

BAIRD, Presiding Judge.

Appellant Red Head Brass, Inc. appeals from the decision of the Wayne County Court of Common Pleas, which granted summary judgment to appellee Buckeye Union Insurance Company. We affirm.

I

Red Head Brass, Inc. ("Red Head") was insured under a business liability insurance policy issued by Buckeye Union Insurance Company ("Buckeye") for the period May 9, 1992, to May 9, 1993. During that time, a former employee of Red Head secured employment at Action Coupling & Equipment, Inc. ("Action"), a competitor with Red Head in the manufacture of couplings and water delivery equipment used in firefighting. Red Head believed that the former employee had taken Red Head's trade secrets with him and was using them to the benefit of Action. Red Head hired an investigative agency to undertake an investigation. As part of the investigation, an employee of the agency obtained employment at

Action. If industrial theft was discovered, Red Head was prepared to file a civil suit against Action. However, Action uncovered the presence of Red Head's agent in their employ. In August 1993, Action filed suit in Cuyahoga County against Red Head and others for slander, libel, and tortious interference with business, among other things.[1]

At least some of the claims filed by Action against Red Head were arguably covered by Red Head's Buckeye commercial business insurance policy. Red Head notified Buckeye about the suit and on August 26, 1993, Buckeye responded by issuing a "reservation of rights" letter to Red Head. In this letter, Buckeye advised Red Head that the complaint contained claims that, if proved, would fall within the coverage provided by the policy and others that would not. Buckeye also pointed out that Action was seeking punitive damages, which the policy did not cover. Buckeye further advised Red Head that it would exercise its right and duty, under the insurance contract, to defend the case without waiving the possibility of its own nonliability under the policy. Buckeye advised Red Head of its right to secure its own counsel, at its own expense. Buckeye proceeded to engage the law firm of Gallagher, Sharp, Fulton & Norman ("GSFN") to represent Red Head against Action's suit.

Red Head elected to have its own law firms, Buckley, King & Bluso ("BKB") and Critchfield, Critchfield & Johnston ("CCJ"), pursue the case as well. In September 1993 Red Head filed a claim against Action in Wayne County, alleging the misappropriation of trade secrets and demanding an accounting and punitive damages. Ultimately this case was dismissed, and the dismissal affirmed on appeal, because the claim had to be filed, if at all, as a counterclaim in the Cuyahoga case. In the meantime, on October 19, 1993, Red Head filed a counterclaim in the Cuyahoga case. In November 1995, several of the Action principals involved in the Cuyahoga suit filed suit in Holmes County against a principal of Red Head and others, asserting claims related to those in the Cuyahoga case.

Red Head's private counsel pursued the counterclaim and the Wayne suit. Throughout the course of the litigation, GSFN worked on the defense of the Cuyahoga case. On March 15, 1996, BKB's counsel Brent Buckley wrote to Buckeye's litigation specialist, mentioning the Holmes County suit, and requesting payment of BKB's and CCJ's legal fees and expenses for prosecuting the Cuyahoga counterclaim and the Wayne case. Buckley's letter stated that Buckeye's reservation of rights letter compelled Red Head's employment of private counsel and that absent Buckeye's voluntary payment of these costs, Red Head

---

1. The complaint was amended on February 4, 1994.

was prepared to take legal action to secure this payment. Buckeye refused to tender payment, and Red Head sued the insurer in Wayne County.

Red Head's suit against Buckeye asserted three claims. The first was breach of contract for Buckeye's failure to prosecute the Cuyahoga counterclaim and the Wayne case, and failure to defend in the Holmes suit. The second was breach of fiduciary duty, alleging that Buckeye used GSFN's services for its own interests and defenses as against those of Red Head. The third claim was unjust enrichment resulting from the alleged breach of contract.

Red Head sought summary judgment on the breach of contract and breach of fiduciary duty. Buckeye filed a motion for summary judgment on all three issues. In its journal entry the trial court ruled on a number of motions previously filed by the parties, as well as the motions for summary judgment. The trial court granted summary judgment to Buckeye, finding that it had not breached its duty to defend under the contract, that it thereby was not unjustly enriched by failing to pay for legal services unrelated to its duty under the contract, and that there was no breach of fiduciary duty. Red Head filed the instant appeal.

On appeal Red Head assigns as error (1) the grant of summary judgment to Buckeye on the breach of contract, because (a) the reservation of rights letter compelled Red Head to hire private counsel and (b) Buckeye was obliged to pay for the prosecution of the counterclaim, (2) the grant of summary judgment on the fiduciary duty claim, (3) the grant of summary judgment on unjust-enrichment claim, (4) the court's consideration, in summary judgment, of Buckeye's policy defenses that were not raised in its answer to the complaint, and (5) the trial court's failure to strike the affidavit of Thomas Kaiser of GSFN. We will rearrange these assignments of error to more effectively treat each matter.

## II

"ASSIGNMENT OF ERROR V

"The trial court erred in denying Red Head's motion to strike the affidavit of Thomas Kaiser filed in support of Buckeye's motion for summary judgment because it failed to meet the requirements of Civil Rule 56(E)."

The trial court denied Red Head's motion to strike several portions of the affidavit of Thomas Kaiser, the GSFN attorney who represented Red Head in the defense of the Cuyahoga suit. Affidavits considered in support of a motion for summary judgment must be based "on personal knowledge, [and] set forth such facts as would be admissible in evidence." Civ.R. 56(E).

Red Head challenged Kaiser's paragraph six, where he stated that his firm was advised by Red Head and its counsel of their original plan to file suit

against Action, but that Action filed the Cuyahoga complaint first. Red Head challenges this as hearsay, but we agree with Buckeye's response that this is not hearsay, under Evid.R. 801(D)(2), because it is an admission by a party-opponent. The next challenged statement is in paragraph ten where Kaiser said "it became apparent" that the prosecution of the various lawsuits by Red Head and its private counsel was based more on emotion than on practical considerations. Red Head argues that this was an inadmissible statement of Kaiser's impression of the state of mind of the various Red Head actors. Buckeye defends the statement as a present-sense impression of Kaiser, an exception to the hearsay exclusion under Evid.R. 803(1). We do not agree with Buckeye's analysis. However, it is clear from the trial court's analysis in summary judgment that it considered only the terms of the contract when deciding Buckeye's duty to defend on the various claims. Thus, to the extent that the trial court should have stricken this statement in the Kaiser affidavit, its failure to do so was harmless error.

The next challenged statement in paragraph eleven is that Kaiser's suggestion of a settlement with Action was rejected by Red Head and its personal attorneys, "who felt that they had a 'twenty million dollar counterclaim.' " Red Head objects to this as inadmissible testimony as to the state of mind of a third party. Buckeye answers that this is consistent with Kaiser's deposition testimony and is based on his personal knowledge. We agree. Red Head also objects to paragraph twelve where Kaiser said that "[i]t was * * * learned" that Action also rejected the above settlement proposal. Red Head objects that the statement is not based on Kaiser's personal knowledge, but we find this assertion to be without merit, as Kaiser was involved in the litigation at that time and was able to testify regarding settlement discussions with Action.

■ Red Head also objects to Kaiser's statement in paragraph fifteen that numerous motions, briefs, and depositions were generated "in discovery battles, most of which were not necessary in connection with the defense of the case as opposed to the pursuit of the counterclaim." Red Head also objects to Kaiser's statement in paragraph sixteen that a defense on the Cuyahoga claim did not require the filing of the counterclaim, and could have been conducted more easily without it. Red Head says that the affidavit does not demonstrate a basis for personal knowledge. However, the record supports the existence of motions, briefs and depositions. Kaiser attended many of the depositions and he knew about all of the motions, briefs, and depositions, in connection with his defense of the Cuyahoga suit. There was no dispute that Kaiser was an experienced insurance litigator and was capable of formulating an expert opinion about the value of these actions to Red Head's defense. We find Red Head's objection to these portions of the affidavit to be without merit.

Having concluded that the sole portion of the affidavit which should have been stricken by the trial court resulted in harmless error, we overrule Red Head's fifth assignment of error.

## III

"ASSIGNMENT OF ERROR IV

█ "The trial court erred in considering Buckeye's summary judgment defenses based on the insurance policy and in entering summary judgment in Buckeye's favor on portions of the complaint based on those defenses."[2]

Red Head asserts that Buckeye's failure to raise its policy-based defenses in its answer to the complaint constituted a waiver of such defenses. The defenses in question are Red Head's failure to give adequate notice of the Holmes lawsuit, as required in the insurance contract, and the policy provision that required Buckeye only to defend the insured in lawsuits, not prosecute lawsuits on behalf of the insured. Red Head says that these defenses are affirmative defenses and, as such, must be raised in answer to the complaint, or they are waived.

An affirmative defense is defined as "any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim (the 'confession') but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the 'avoidance')." *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 33, 661 N.E.2d 187, 189–190, citing 1 Klein, Browne & Murtaugh, Baldwin's Ohio Civil Practice (1988) 33, T 13.03. In Ohio, Civ.R. 8(C) requires a party to assert affirmative defenses in the first responsive pleading or amendment thereof. Failure to raise such an affirmative defense will result in its waiver. See, generally, *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 3–4, 12 OBR 1, 2–3, 465 N.E.2d 377, 378–379.

Red Head's complaint stated that the plaintiff had "performed all of its obligations under the insurance contracts [*sic* ] and has complied with all material terms of the contract." Buckeye denied this assertion in its answer. Likewise, Red Head claimed that Buckeye had a duty under the contract to prosecute Red Head's counterclaim. Buckeye specifically denied this in its answer. It also denied Red Head's claim that its request to be reimbursed for legal expenses was "in accordance with the Policy and applicable law[.]" As to the extent of Buckeye's duty to defend under the insurance policy and to reimburse Red Head's legal expenditures, these are by no means "affirmative defenses." These

---

2. The portion of this assignment of error that deals with summary judgment on Buckeye's failure to defend in the Holmes case is dealt with in the discussion of Red Head's first assignment of error, *infra*.

defenses are not an admission of Red Head's claim coupled with a theory of avoidance of recovery. We find that these denials were sufficient to put Red Head on notice that the extent of the duty to defend under the contract would be an issue in this case. Thus, we overrule Red Head's fourth assignment of error.

## IV

"ASSIGNMENT OF ERROR I

"The trial court erred in granting Buckeye's motion for summary judgment on Red Head's claim for breach of contract, and should have entered summary judgment for Red Head.

"A. The trial court erred in holding that Buckeye's reservation of rights letter did not create conflicts between Buckeye and Red Head that obligated Buckeye to pay for Red Head's independent counsel to defend the case.

"B. The trial court erred in holding that Buckeye had no duty to pay for the prosecution of Red Head's counterclaim.

"ASSIGNMENT OF ERROR III

"The trial court erred in granting Buckeye's motion for summary judgment on Red Head's claim for unjust enrichment."

To prevail on a summary judgment motion, the moving party "bears the initial burden of *demonstrating* that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis *sic.*) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 273. To accomplish this, the movant must be able to point out to the trial court "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Id.* at 293, 662 N.E.2d at 273. If such evidence is produced, the nonmoving party must proffer evidence that some issue of material fact remains for the trial court to resolve. *Id.*

An appellate court reviews an award of summary judgment *de novo* and, like the trial court, must view the facts in the case in the light most favorable to the nonmoving party. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244. Any doubt must be resolved in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 13, 467 N.E.2d 1378, 1383–1384.

## A

■ Red Head's claim of unjust enrichment is based in part on the predicate that Buckeye breached its contract to defend. Red Head argues that the work and expenditures by BKB and CCJ to protect Red Head's interests in the

litigation resulted in unjust enrichment to Buckeye, who was obliged by contract to provide this defense. The resolution of this issue will depend upon the resolution of the breach-of-contract issue.

Red Head also argues that some expenditures made by BKB and CCJ, such as conducting depositions, could legitimately be expenses for the defense owed by Buckeye. There was testimony that Buckeye did pay for some expenses that benefited both the defense and the counterclaim. Red Head now wants to allocate other expenses to the defense. However, by the terms of the policy "[n]o insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." There is no evidence that Red Head secured Buckeye's consent to these expenditures. Red Head also offered no evidence that Buckeye unreasonably refused to pay for legitimate expenditures necessary for the defense. By the terms of the contract, such expenses must be borne by the insured.

## B

We now turn to the breach-of-contract claim, which implicates three issues.

### 1. Insurer's Duty to Defend and Its Reservation of Rights

Red Head has argued that in other jurisdictions, the insurer's reservation-of-rights letter, which puts the insured on notice that he may desire to secure private counsel, contractually obligates the insurer to pay for that counsel, under the insurer's duty to defend. However, that is not the law in Ohio.

It is well-established law in this state that an insurer's duty to defend is broader than the duty to indemnify. *Socony–Vacuum Oil Co. v. Continental Cas. Co.* (1945), 144 Ohio St. 382, 29 O.O. 563, 59 N.E.2d 199, paragraph one of the syllabus. The duty to defend depends on the underlying complaint. *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, paragraph one of the syllabus. As long as the complaint contains some claim which is arguably within the scope of the policy coverage, the insurer is obliged to defend the insured. *Id.* See, also, *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph two of the syllabus. However, "[a]n insurance company, which by contract is obligated to defend its insured in a negligence action, may defend in good faith without waiving its right to assert at a later time the policy defenses it believes it has, provided that it gives its insured notice of any reservation of rights." *Id.* at paragraph one of the syllabus.

Red Head asserts that the established holding of *Socony* stands for the proposition that whenever the insurer asserts nonliability in its reservation-of-rights letter, it must pay for the insured's cost of defending its interests. However, the

trial court below correctly interpreted *Socony*. The holdings of *Socony* at issue here, are as follows:

"A liability insurance company breaches its contract to defend by making to the insured such a claim of nonliability for indemnification as to render it impossible for such company, in making defense, to protect both its own interests and those of the insured.

"* * * When there is such a breach of contract, accompanied by an invitation to insured to employ its own counsel to participate in the defense for its own protection, the insured, protesting against such action, may employ counsel with notice to the insurance company that it must bear the expense, and the company will be liable for reasonable attorney fees and proper expenses incurred in making defense." *Id.*, 144 Ohio St. 382, 29 O.O. 563, 59 N.E.2d 199, paragraphs three and four of the syllabus.

Under *Socony* an insurer in Ohio may proceed to defend the insured so long as the situation does not arise that the insurer's defense of the insured and its defense of its own interests are mutually exclusive. In such a case, the insurer, still bound in its duty to defend the insured, would have to pay the cost of the insured's private counsel. In *Socony,* after defending the case for a year, the insurer's counsel, by way of a reservation-of-rights letter, incorrectly advised the insured that it could not protect the insured's interests and its own. Consequently, the insured secured private counsel. In the end, the judgment was rendered in favor of the insured, a result beneficial to the insurer as well.

Red Head focuses on the outcome of the underlying case in *Socony,* and concludes that even when a beneficial result may be obtained for the insurer and the insured, the reservation-of-rights letter itself imposes on the insurer the obligation to pay for the insured's private counsel. That is, whenever the insurer notifies the insured that any part of the claim against the insured falls outside the policy provisions, the insurer must pay for the insured's private counsel. This is not the holding of *Socony* or the rule of any subsequent Ohio law. *Socony* holds that when an insurer's interests and those of its insured are mutually exclusive, the insurer must pay for counsel for the insured as well as for its own counsel.

Buckeye was obliged by contract to defend against all the claims in Action's Cuyahoga lawsuit, until such point as Buckeye might fairly conclude that no claim fell within the policy coverage. Up to that point, Red Head would have the service that it bargained for under the insurance contract, namely, defense on all the claims and indemnity on the covered claims. After that point Red Head would have no defense, and no coverage, which is what was bargained for under the exclusions and limitations of the policy. This is exactly what happened. The mere fact that certain claims fell outside the policy coverage, as explained in the

reservation-of-rights letter, did not obligate Buckeye to pay for Red Head's private legal expenditures because Buckeye, through GSFN, was able to defend Red Head.

"Implicit in all the cases dealing with the rights of an insured to recover attorney fees in a declaratory judgment action is that a breach of contract must occur under the policy. As a precursor to the award of attorney fees, the insurance company must breach the contract by wrongfully or unjustifiably refusing to defend the insureds in a tort action under the policy." (Citations omitted.) *Allstate Ins. Co. v. Vasquez* (1991), 74 Ohio App.3d 564, 567, 599 N.E.2d 756, 758. At no point prior to the settlement of the Cuyahoga case did Buckeye refuse to defend Red Head on the entire complaint, including covered and noncovered claims under the policy. Deposition testimony from BKB counsel Buckley indicates that Buckeye provided for a defense of the claims. Testimony from Buckeye litigation specialists indicated that the insurer was not involved in guiding that defense. GSFN counsel testified that he represented Red Head vigorously, and looked only to the interests of Red Head, his client.

We conclude that Buckeye could, and did, fairly defend Red Head under its reservation of rights and it was not obligated to pay for Red Head's private counsel.

### 2. Insurer's Duty to Prosecute a Counterclaim

 Red Head argues that Buckeye's duty to defend included a duty to prosecute Red Head's compulsory counterclaim against Action in the Cuyahoga case (and by extension the Wayne case, which was dismissed because the trial and appellate courts held it must be filed, if at all, as a counterclaim in the Cuyahoga case). We find that there is no such duty in Ohio law, and there was no such duty within the contract of the instant policy.

 "Because an insurance policy is a written contract, we look to its terms to determine the intention of the parties concerning coverage. In so doing, the court must give the words in the policy their plain and ordinary meaning." *Minor v. Allstate Ins. Co., Inc.* (1996), 111 Ohio App.3d 16, 20, 675 N.E.2d 550, 553, citing *State Farm Auto. Ins. Co. v. Rose* (1991), 61 Ohio St.3d 528, 575 N.E.2d 459, overruled on other grounds, *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, paragraph one of the syllabus. If the insurance contract is "clear and unambiguous" its interpretation is a question of law. *Beaver Excavating Co. v. United States Fid. & Guar. Co.* (1998), 126 Ohio App.3d 9, 14, 709 N.E.2d 858, 861. If the provisions of the contract may have more than one interpretation, the provisions "will be construed strictly against the insurer and liberally in favor of the insured." *Id.*, citing *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380.

The pertinent provisions of the contract state:

"COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

"1. Insuring Agreement

"a. * * * We will have the right and duty to defend any 'suit' seeking * * * damages. We may at our discretion investigate any 'occurrence' or offense and settle any claim or 'suit' that may result. But:

"* * *

"(2) * * * No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

"* * *

"SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

We will pay, with respect to any claim or "suit" we defend:

"1. All expenses we incur.

"* * *

"4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit,' including actual loss of earnings up to $100 a day because of time off from work."[3]

The definition section of the policy includes the following:

"13. 'Suit' means a civil proceeding in which damage because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies are [*sic*] alleged."

The contract does not define "defend" or "defense." For these terms, we will apply their plain and ordinary meaning. In the context of a legal suit "defend" is defined as "to deny or oppose the right of a plaintiff in regard to (a suit or wrong charged)[.]" Webster's Third New International Dictionary (1993) 591. In this context, "defense" is "the act of defending [as] opposed to attack" and "a defendant's denial, answer, or plea: opposing or denial of the truth or validity of the plaintiff's * * * case[.]" *Id.* Neither definition includes the prosecution of one's legal claim against another. Thus, giving the plain meaning to the words of the contract, we find that the contract did not require Buckeye to pay for the prosecution of Red Head's counterclaim.

---

**3.** The contract, under "Duties In The Event Of Occurrence, Claim Or Suit," also provides the disclaimer that "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

Red Head argues that Buckeye has admitted in depositions that it does occasionally pay for the counterclaims of its insured. We find no merit in this argument. Red Head points to deposition testimony of Paul Fulton, a litigation specialist for Buckeye, who stated that sometimes the insurer may pay for necessary counterclaims. However, this testimony was in response to a series of hypothetical questions about whether the insurer would ever pay an insured's counterclaim. The uncontroverted testimony by Fulton and by William Ford, another Buckeye litigation specialist, was that Buckeye never paid for an insured's counterclaim unless either Buckeye would benefit financially through subrogation of the insured's interests or the counterclaim was absolutely essential to the defense itself. These gentlemen, as well as GSFN counsel Kaiser, testified that neither situation was present in the Cuyahoga case. Both Buckeye employees strained to recite a single example where the second situation may exist, and neither could remember, from their collective decades of experience, a situation where Buckeye had paid for the prosecution of a counterclaim. From such testimony, Red Head concludes that Buckeye has admitted that it pays for counterclaims. We must disagree.

Both sides concede that the Cuyahoga counterclaim by Red Head was necessary in the sense that it was a compulsory counterclaim, pursuant to Civ.R. 13(A). Red Head's claim against Action was part of the same set of operative facts as Action's claim against Red Head. Consequently, Red Head's claim had to be filed as a compulsory counterclaim in Action's original Cuyahoga case or it would be forever barred. See *Hershman's, Inc. v. Sachs–Dolmar Div.* (1993), 89 Ohio App.3d 74, 78–79, 623 N.E.2d 617, 619–620.

The terms of the insurance contract, which define Buckeye's duty to defend, in no way obligated Buckeye to compensate Red Head for the expense of prosecuting its counterclaim. Red Head, in its contract with Buckeye, bargained only for the insurer to pay for defending the insured against litigation. It did not bargain for legal representation where the insured is the plaintiff. Nor does Ohio law mandate such services by an insurer. Red Head would like this court to expand the duty to defend in Ohio, but we decline to do so.

### 3. Duty to Defend and Proper Notice[4]

The last consideration for review of the grant of summary judgment on the breach of contract claim is Red Head's assertion that Buckeye breached its duty to defend by failing to pay for the defense of the Holmes county suit. Buckeye

---

4. Appellant argues this point in its fourth assignment of error, where it argues that Buckeye's assertion of lack of notice, as an affirmative defense, was waived because it was not addressed in Buckeye's answer to the Red Head complaint. We will deal with the breach-of-contract portion of appellant's argument here.

maintains that Red Head did not give it timely notice of the Holmes suit, as required by the contract, and therefore it was not required to defend the case.

The contract provides:

"SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS

"\* \* \*

"2. Duties In The Event of Occurrence, Claim Or Suit.

"\* \* \*

"b. If a claim is made or 'suit' is brought against any insured, you must

"(1) Immediately record the specifics of the claim or 'suit' and the date received; and

"(2) Notify us as soon as practicable.

"You must see to it that we receive written notice of the claim or 'suit' as soon as practicable.

"c. You and any other involved insured must:

"(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.' "

This contract does not require the insured to give notice of a claim or case within a specific time frame, but requires notice to be given "as soon as practicable" along with copies of legal demands forwarded to the insurer "immediately." The Ohio Supreme Court has held that "[t]he term 'immediate,' contained in the policy, means action taken on the part of the assured within a reasonable time under the circumstances of the case." *Heller v. Std. Acc. Ins. Co.* (1928), 118 Ohio St. 237, 160 N.E. 707, at paragraph one of the syllabus, citing *Travelers' Ins. Co. v. Myers* (1900), 62 Ohio St. 529, 57 N.E. 458, overruled in part on other grounds, *Kroll v. Close* (1910), 82 Ohio St. 190, 92 N.E. 29. *Heller* also requires that the insured use "due diligence" in ascertaining the loss and notifying the insurer. *Id.* at paragraph two of the syllabus and 243–244, 160 N.E. at 709.

 Here, Red Head had secured the services of two independent law firms to protect its interests. Red Head should have been aware of the insurance policy's notice requirement, since it was already involved in litigation that Buckeye was defending under the policy. Nonetheless, Red Head did not notify Buckeye of the Holmes suit. Rather, the first mention of this suit came four months after the suit was filed and three months after Red Head principal William Cullen was dismissed from the suit. See *State ex rel. Red Head Brass, Inc. v. Holmes Cty. Court of Common Pleas* (Oct. 16, 1996), Holmes App. No. 96CA556, unreported, 1996 WL 608446. BKB counsel Buckley mentioned the

suit in his March 15, 1996 letter to Buckeye. That letter specifically referenced the Cuyahoga case and most of its seven pages consisted of a "first demand" that Buckeye pay Red Head's legal costs related to the counterclaim, in an amount approaching $350,000. The letter referred the Holmes case, which was captioned *"David Eliot, et al. v. William J. Cullen, et al."* The reference to the Holmes case did not include the case number and no copy of the complaint was submitted, as was required by the contract. Buckley admitted in his deposition testimony that he did not send a copy of the complaint, and that as to such notices to the insurer, "we always had the client tender these notices to the [insurance] carrier." Buckley's reference to the Holmes case was never intended to be notice.

We find that this offhand reference to the Holmes case, three months after Red Head's CEO was dismissed as a party, in a letter whose caption referred only to the Cuyahoga case, did not constitute notice. We find that the lack of notice as to the Holmes case constituted a breach of Red Head's obligation under the policy, such that Buckeye's duty to defend was not invoked. Thus, Buckeye did not breach its duty to defend under the contract with reference to the Holmes case.[5]

We have concluded that Buckeye's reservation-of-rights letter did not create such a statement of nonliability as to preclude the insurer's protection of its own and its insured's interests. Thus, Buckeye was not obliged to pay for Red Head's private counsel under its duty to defend. We have concluded that under the contract and under Ohio law, Buckeye was not obliged to prosecute Red Head's counterclaim. We have also concluded that Red Head did not provide notice of the Holmes case as required by the policy, and thus Buckeye was not obligated to defend Red Head in this case.

Thus, as to the breach-of-contract and the unjust-enrichment claims, we find that the trial court appropriately granted summary judgment for Buckeye. There remained no genuine issues of material fact, Buckeye was entitled to judgment as a matter of law, and reasonable minds could come to but one

---

**5.** Red Head further claims that Buckeye was not going to defend on the Holmes case, even if it had notice. Red Head cites *Hartford Acc. & Indemn. Co. v. Randall* (1932), 125 Ohio St. 581, 183 N.E. 433, paragraph three of the syllabus, which held that when an insurer preemptively denies a duty to defend, the insured will not be held to his failure to provide immediate notice of the suit. Red Head points to deposition testimony by Paul Fulton of Buckeye. When shown the Holmes complaint, Fulton was asked whether Buckeye would have defended the suit, after notice, or whether it would have concluded it had no duty to defend. Red Head's counsel pressured Fulton to render a definitive answer after only a cursory glance at the complaint, which needed to be compared to the detailed provisions of the insurance policy. Fulton stated that "at first blush" he would probably conclude there was no coverage and no duty to defend the Holmes suit. Needless to say, such testimony does not constitute the preemptive denial addressed in *Randall*.

conclusion, in favor of Buckeye. Red Head's first and third assignments of error are overruled.

V

"ASSIGNMENT OF ERROR II

"The trial court erred in granting Buckeye's motion for summary judgment on Red Head's claim for breach of fiduciary duty, and should have entered summary judgment for Red Head."

■■■ In Ohio, an insurance company has a fiduciary responsibility toward its insured to act in good faith toward its insured in carrying out its duties under the contract. *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 694, 590 N.E.2d 1228, 1232, overruled in part on other grounds, *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus.

■■■ Red Head claims that Buckeye breached its fiduciary duty in several respects. The first alleged breach is Buckeye's failure to disclose "its admitted obligation for the prosecution of a necessary counterclaim." We have addressed this claim above and have determined that there was no obligation to pay for the disputed counterclaim, nor was there any admission by Buckeye of such an obligation. Thus, there could be no breach of fiduciary duty.

.■■■ Red Head also claims that Buckeye breached its fiduciary duty when it hired separate counsel to prepare jury interrogatories and verdict forms, so that, in the event of an adverse jury verdict, it could determine what damages were assigned to each claim. In the end, the court granted Red Head summary judgment on the covered claims. Red Head once again points out the "admission" by Paul Fulton of Buckeye that the result of jury interrogatories could be "adverse" to Red Head. From this Red Head concludes that Buckeye breached its fiduciary duty to Red Head. As discussed above, a breach of fiduciary duty in the context of an insurer/insured relationship arises when the insurer fails to perform under the contract or unreasonably refuses to act in a prompt manner in performing its contractual duties.

The contract here required Buckeye to pay only if the jury found for Action on the covered claims. Since Action's complaint alleged a variety of claims, it was in the interest of both Buckeye and Red Head to know the amount of damages the jury was assigning to each claim, in the event of an adverse jury verdict. If the jury survey revealed that the damages were largely or exclusively attributed to noncovered claims, the result would not be to the advantage of Red Head. However, such a result would not amount to "harm" inflicted by Buckeye on Red Head.

Clarity about the jury verdict would do no more than adequately inform the insurer and the insured what their rights and obligations were under the

provisions of the insurance contract. The preparation of jury interrogatories does not differ from an investigation of a case or claim which an insurer is permitted and obliged by contract to undertake. Such an investigation may uncover conclusive evidence that the claim falls outside the coverage of the policy. In the instant case, certainty about the damages awarded on each claim could only work to avoid further litigation between Buckeye and Red Head concerning the amount each party was required to pay on an adverse jury verdict. This is not a breach of the duty of good faith. See *Said*, 63 Ohio St.3d at 694, 590 N.E.2d at 1232.

Red Head also charges that Buckeye breached its duty of good faith by GSFN's failure to disclose actual or potential conflicts created by the reservation of rights letter, as compared to the claims in Action's complaint. The letter itself points out the disparity between the coverage provided and the claims asserted, as well as the issue of noncoverage for punitive damages. This charge is baseless.

Red Head claims that GSFN did not disclose that it was "taking orders from Buckeye on how to conduct the litigation." GSFN did periodically advise Buckeye about the progress of the litigation, and did advise Buckeye of expenses upcoming, such as the cost of a deposition. There is no evidence at all that Buckeye was directing the litigation. All the evidence on the record indicates just the opposite, namely that Buckeye took a "hands off" position and deferred to counsel's judgment about the necessity of expenditures related to the case. Finally, Red Head complains that GSFN should have advised Red Head about the amount of work the firm did for Buckeye. It is undisputed that GSFN was frequently used by Buckeye in its defense of insured. GSFN also performed considerable work for other insurance companies as well as for individual and corporate clients. Two attorneys for GSFN testified that they scrupulously examine each assigned case for conflict of interest and when a conflict occurs, the case is declined.

We find Red Head's claim of breach of fiduciary duty to be without merit. Thus, the trial court appropriately granted summary judgment to Buckeye on this claim. There were no genuine issues of material fact, Buckeye was entitled to judgment as a matter of law, and reasonable minds could come to but one conclusion, against Red Head. We overrule Red Head's second assignment of error.

Having overruled appellant's assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

SLABY and BATCHELDER, JJ., concur.