DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, William Scherer, Akron Auto Auction, Inc., and the Cincinnati Insurance Co., appeal from the judgment of the Summit County Court of Common Pleas. This Court reverses.
 I. {¶ 2} The within action arises out of an accident that occurred on June 3, 2003 wherein the driver, Appellant, William Scherer ("Scherer"), struck pedestrian, Marion Christy ("Christy"). Scherer, who was employed with Appellant, Akron Auto Auction, Inc. ("AAA"), at the time, was assigned to drive a 1991 Chevy van at AAA's facility from the parking lot to the auction line. As Scherer placed the vehicle into drive, the van suddenly and unexpectedly lurched forward. Despite Scherer's attempts to stop the van by applying the brakes, the van continued forward striking Christy who was walking near the front of the van. *Page 2 
 {¶ 3} Christy filed suit against Scherer and AAA. See Summit Cty. Case No. 2004-04-2086. On or about April 24, 2006, Appellant, The Cincinnati Insurance Co. ("Cincinnati Insurance"), as excess insurer of Scherer and AAA, paid and settled the claim filed by Christy. Scherer and AAA transferred, assigned and subrogated to Cincinnati Insurance their rights to seek coverage against Appellee, Owners Insurance Co. ("Owners"), for Christy's bodily injury claim.
 {¶ 4} At the time of the accident, the van was titled and owned by BE Auto Body. Pro Care, Inc., dba BE Auto Body ("BE Auto"), was insured under a policy of insurance with Owners. BE Auto had submitted the van to AAA to sell at auction.
 {¶ 5} On June 16, 2006, Appellants, Scherer, AAA, and Cincinnati Insurance (hereinafter collectively referred to as "Appellants"), filed suit against Owners. Appellants sought declaratory judgment on the insurance policy issued by Owners to its named insured, Pro Care, Inc., dba BE Auto Body. Appellants argued that they were entitled to indemnification from Owners for the amount they paid to Christy because BE Auto was the owner and titleholder of the van at the time of the accident.
 {¶ 6} On February 16, 2007, Owners filed a motion for summary judgment. On March 21, 2007, Appellants filed a motion for summary judgment. On November 7, 2007, the trial court issued an order granting summary judgment in favor of Owners and denying Appellants' summary judgment motion. Appellants timely appealed the trial court's decision, raising one assignment of error for our review. *Page 3 
 II. ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT IN FAVOR OF [OWNERS] AND DENYING THE MOTION FOR SUMMARY JUDGMENT OF [APPELLANTS]."
 {¶ 7} In Appellants' sole assignment of error, they contend that the trial court erred in granting summary judgment in favor of Owners and denying their motion for summary judgment. We agree.
 {¶ 8} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 9} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 10} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ. R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. "[T]he non-moving party may not rest upon the mere allegations and denials in the pleadings" but *Page 4 
instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 11} The declaratory judgment action is based on the interpretation of the insurance policy issued by Owners to its named insured, BE Auto. We first note that, in construing the terms of the insurance policy at issue, the Ohio Supreme court has stated that: "`insurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties.'"Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512,2002-Ohio-2842, at ¶ 8, quoting Rhoades v. Equitable Life Assur. Soc. ofthe U.S. (1978), 54 Ohio St.2d 45, 47. Moreover, where a contract contains language which is clear and unambiguous, its interpretation is a question of law. Red Head Brass, Inc. v. Buckeye Union Ins. Co.
(1999), 135 Ohio App.3d 616, 627. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus, citing Faruque v. Provident Life Acc. Ins. Co. (1987),31 Ohio St.3d 34, syllabus.
 {¶ 12} The Owners' policy is a single policy containing two separate coverage forms: (1) the Garage Liability Coverage Form and (2) the Dealer's Blanket Coverage Form. The Garage Liability Form states in pertinent part:
 "GARAGE LIABILITY
 "The Company, in consideration of the payment of the premium and of the statements in the Declarations made a part hereof and subject to all the terms of this insurance, agrees with the insured named in the Declarations with respect to any one or more of the coverages for which a premium is charged:
 "SECTION I — INSURING AGREEMENTS *Page 5 
 "A. BODILY INJURY LIABILITY.
 "B. PROPERTY DAMAGE LIABILITY.
 "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed under any insured contract as defined herein, or damages because of:
 "A. bodily injury, sickness or disease including death at any time resulting therefrom; or
 "B. injury to or destruction of tangible property, including the loss of use thereof[.]"
 {¶ 13} Scherer and AAA are not "named insureds" under the policy. However, under the "Definitions" section of Owners' Garage Liability Coverage Form, "insured" is defined as:
 "`INSURED' shall mean, wherever used in Coverages A and B and in other parts of this coverage form when applicable to these coverages, not only the named insured but also any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this coverage form, and any person while using an automobile covered by this coverage form and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured." (Emphasis added.)
 {¶ 14} Accordingly, Owners' Garage Liability Coverage Form extends coverage to any person or organization using the covered vehicle with the permission of the named insured, BE Auto.
 {¶ 15} Here, the evidence establishes, and it is undisputed, that BE Auto's employee, Jerome McKay, delivered the van to AAA and gave AAA and its employee, Scherer, permission to use and operate the vehicle through the auction process. McKay testified that the vehicle he drove to AAA was, as far as he knew, titled in the name of BE Auto. He did not think the vehicle was ever titled in the name of AAA nor owned by AAA. McKay testified that the van had not been sold at the time of the accident and was therefore, still titled to BE Auto. McKay *Page 6 
also testified that AAA had an obligation to either sell the vehicle at the price for which BE Auto wanted to sell it or return it to BE Auto undamaged.
 {¶ 16} Owners provided no evidence to contradict the evidence that BE Auto had given permission to AAA to use the van. As such, we find that there is no genuine issue of material fact and reasonable minds could only conclude that AAA was a permissive user of the vehicle and was therefore an "insured" as defined by BE Auto's policy with Owners.
 {¶ 17} The trial court reached this same conclusion. However, the trial court found that the "Bailee" provision contained in the Dealer's Blanket Coverage Form applied to exclude coverage. The Bailee provision upon which the trial court relied provides: "[t]he insurance afforded bythis coverage form shall not inure directly or indirectly to the benefit of any carrier or bailee liable for loss to the automobile or watercraft." [Emphasis added.] This exclusion is contained only in the Dealer's Blanket Coverage Form. It is not contained in the Garage Liability Coverage Form.
 {¶ 18} The Tenth District Court of Appeals in Tomas v. Nationwide Mut.Ins. Co. (1992), 79 Ohio App.3d 624, 628-29, explained the bailment relationship as follows:
 "A bailment exists where one person delivers personal property to another to be held for a specific purpose with a contract, express or implied, that the property shall be returned or accounted for when this special purpose is accomplished or retained until the bailor reclaims the property. The duty of the bailee is to hold the property in accordance with the terms of the bailment. Bailment involves the transfer of a possessory interest only and not an ownership interest in property. A bailment may be for the benefit of only the bailor or bailee, or for the mutual benefit of both."
 {¶ 19} A review of this policy reflects that it contains two separate coverage forms that provide different forms of coverage to the insured. The Blanket Coverage Form includes the following: Comprehensive Coverage (which "pay[s] for loss or damage to the automobile * * * from any cause except collision or impact with another vehicle or object or upset"), Collision *Page 7 
Coverage (which covers "loss or damage to the automobile * * * caused by collision or impact with another vehicle or object, or upset"), False Pretense Coverage, New Automobile Diminished Value Coverage and Drive Other Cars Coverage. In contrast, the Garage Liability Coverage Form covers Bodily Injury Liability, Property Damage Liability, Passenger Accident and Premises Medical Payments.
 {¶ 20} Each coverage form is separately numbered and contains its own table of contents entitled "Quick Guide". In addition, each coverage form contains a separate provision entitled "Declarations". The two Declarations provisions contain nearly identical wording.[1] The Declarations provision contained in the Dealer's Blanket Coverage Form states:
 "By the acceptance of this coverage form the named insured agrees that the statements in the Declarations are his agreements and representations; that this insurance is issued in reliance upon the truth of such representations and that this coverage form and Declarations and that this coverage form and Declarations attached hereto embody all agreements existing between himself and the Company or any of its agents relating to this insurance." (Emphasis added.)
 {¶ 21} As the Dealer's Blanket Coverage Form does not provide liability coverage for bodily injury, such as those at issue in this matter, it is inapplicable to this matter. The Garage Liability Coverage Form, in contrast, provides coverage for bodily injuries but does not contain the Bailee exclusion. Moreover, the Bailee provision expressly states that it only applies to "insurance afforded by this coverageform[.]" (Emphasis added.) Therefore, its own limiting language confines its application to the Dealer's Blanket Coverage Form. *Page 8 
 {¶ 22} While we find that there is only one interpretation of this provision (i.e. that the Bailee provision is inapplicable to the Garage Liability Coverage Form), even if it were susceptible to two interpretations, we are compelled to construe the provision against the drafter. King, 35 Ohio St.3d at syllabus, citing Faruque, 31 Ohio St.3d at syllabus. If Owners intended to apply the Bailee provision to the Garage Liability Coverage Form, it could have expressly included it in that form. It did not.
 {¶ 23} Owners contends that even if the Bailee provision from the Blanket Coverage Form is inapplicable to this matter, liability coverage is nonetheless excluded by the following provision contained in the Garage Liability Coverage Form:
 "B. Property Damage Liability
 "* * *
 "Coverages A and B shall not apply:
 "* * *
 "(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any:
 "(2) automobile:
 "* * *
 "(iv) possession of which has been transferred to another by the named insured pursuant to an agreement of sale. This exclusion does not apply with respect to the named insured." (Emphasis added.)
 {¶ 24} Owners urges us to find that AAA held possession of the van "pursuant to an agreement of sale" inasmuch as a sale at auction was anticipated. The Garage Liability Coverage Form provides no definition for "agreement of sale". However, the First District Court of Appeals inWest American Ins. Co. v. Motorists Mutual Ins. Co. (Sept. 13, 1978), 1st Dist. Nos. CA77-06-0075 and CA77-07-0090, *Page 9 
construed a similar provision. The Motorists Mutual policy provision at issue in the West American Ins. Co. case stated that the insurance policy did not apply to "`any person or organization, * * * with respect to the automobile, possession of which has been transferred to anotherby the named insured pursuant to an agreement of sale.'" (Emphasis sic.) Id. at *2. The First District Court of Appeals found that the Motorists Mutual policy which covered the insured, did not extend to cover the person who purchased a vehicle from the insured because, at the time of the accident, possession of the vehicle had been transferred by the named insured to the purchaser pursuant to an agreement of sale. Id. at *3. The purchaser at issue in West American Ins. Co. was involved in a collision immediately after picking up the vehicle from the insured. Title to the vehicle had not been transferred at the time of the collision. However, the court reasoned that even though title had not been transferred at the time of the accident, possession had been transferred to the purchaser pursuant to an agreement of sale because (1) the insured had agreed to sell the vehicle to the purchaser and (2) to transfer title to him, (3) the purchaser had paid the full purchase price of the vehicle to the insured and (4) the purchaser took possession of the vehicle.
 {¶ 25} In contrast to West American Ins. Co., here the evidence reflects that possession of the vehicle had not been transferredpursuant to an agreement of sale at the time of the accident. Richard Zeffer, an employee of AAA, testified that when a dealer brings a car to AAA to be auctioned, AAA then takes the vehicle from the dealer and places the vehicle "in a position to offer it for sale." Zeffer further testified that "[w]e will offer it for sale for the registering dealer or return it to him or reregister it for another sale if he so desires." Here, BE Auto and AAA had agreed that AAA would try to sell the vehicle for BE Auto. Unlike West American Ins. Co., BE Auto had not agreed to sell the van to AAA and to then transfer title to it. Rather, *Page 10 
AAA had agreed to sell the van to another purchaser who would then obtain title from BE Auto. Further, both McKay and Zeffer testified that the auction to sell the van had not occurred at the time Christy suffered his injuries. Scherer was driving the van in the auction line when he struck Christy. Both men also testified that title to the van had not transferred at the time of the accident and that the van was still titled to BE Auto at that time.
 {¶ 26} Accordingly, we find that the trial court erred in applying the Bailee provision to exclude Owners' coverage for Christy's bodily injury claim as AAA was a permissive user of the van and the Garage Liability Coverage Form contained no provision excluding coverage to AAA. We find that no genuine issues of material fact remain and that reasonable minds may only conclude that Owners' Garage Liability Coverage Form provided liability coverage to AAA for their permissive use of the vehicle at the time of Christy's accident. Therefore, the trial court erred in granting summary judgment in favor of Owners and in denying summary judgment to Appellants.
 {¶ 27} Appellants' sole assignment of error is sustained.
 III. {¶ 28} Appellants' sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal. *Page 11 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellee.
Carr, P. J. and Whitmore, J., concur.
[1] The Declarations provision contained in the Garage Coverage Form interchanges the first and second references to "this coverage form" and "this insurance". Instead, it reads "By the acceptance of thisinsurance * * *; that this coverage form is issued in reliance upon the truth of such representations[.]" The rest of the provision is identical to that contained in the Dealer's Blanket Coverage Form. *Page 1