TAYLOR, Appellant,

v.

**VOLUNTEERS OF AMERICA, Appellee.**

[Cite as *Taylor v. Volunteers of Am.*, 153 Ohio App.3d 698, 2003-Ohio-4306.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020651.

Decided Aug. 15, 2003.

</div>

Freking & Betz and Sheila M. Smith, for appellant.

Rendigs, Fry, Kiely & Dennis, L.L.P., and Felix J. Gora; Lindhorst & Dreidame Co., L.P.A., and Edward S. Dorsey, for appellee.

---

HILDEBRANDT, Presiding Judge.

{¶ 1} Plaintiff-appellant, Dr. Purcell Taylor Jr., appeals from the summary judgment entered by the Hamilton County Court of Common pleas in favor of defendant-appellee, Volunteers of America ("VOA"), in an action alleging wrong-

ful termination of employment. For the following reasons, we affirm the trial court's judgment.

{¶ 2} Taylor began working for VOA as a psychologist in 1990. At some point during the course of his employment, he had discussions with VOA regarding an insurance policy that would serve as a retirement benefit. Ultimately, VOA did secure a life insurance policy for Taylor, but a dispute developed about the identity of the policy's beneficiaries.

{¶ 3} On April 17, 2001, Taylor filed a lawsuit against VOA, alleging fraud, breach of contract, promissory estoppel, and breach of fiduciary duty, all arising from the dispute over the insurance policy. On May 3, 2001, VOA placed Taylor on administrative leave, and on May 21, 2001, it terminated Taylor from its employment.

{¶ 4} Following his termination, Taylor amended his complaint to allege wrongful termination. In the amended complaint, Taylor alleged that VOA had terminated him in violation of Ohio public policy, in that the dismissal was in response to his filing suit against VOA. VOA filed a motion for summary judgment, and the trial court granted that motion as to all counts of Taylor's complaint.

{¶ 5} In a single assignment of error, Taylor now contends that the trial court erred in granting summary judgment in favor of VOA on the wrongful-termination claim. Taylor does not contest the summary judgment as to the other claims in the complaint.

{¶ 6} Pursuant to Civ.R. 56(C), a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[1] The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.[2] This court reviews the granting of summary judgment de novo.[3]

---

1. See *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189.

2. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

3. *Jorg v. Cincinnati Black United Front*, 153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781, at ¶ 6.

{¶ 7} There is no dispute that Taylor was an employee-at-will and therefore subject to being terminated for any reason, or no reason at all, provided that the termination was not contrary to law.[4] But the Supreme Court of Ohio has stated an exception to the employment-at-will doctrine where the termination is contrary to the clear public policy of Ohio.[5] And the Ohio Supreme Court has held that a "clear public policy" is not limited to statutes enacted by the General Assembly "but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law."[6]

{¶ 8} The Ohio Supreme Court has adopted four elements that must be demonstrated to prove wrongful termination in violation of public policy: (1) that a clear public policy existed and was manifested in a state or federal constitution, in a statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the overriding-justification element).[7] The clarity and jeopardy elements involve questions of law and policy and are to be determined by the court.[8]

{¶ 9} In *Chapman v. Adia Services, Inc.*,[9] this court addressed the clarity element with respect to the claim that an employee may not be terminated for consulting an attorney. In holding that there was a clear public policy in favor of an employee consulting with counsel, we cited three identifiable sources of public policy encouraging such consultation: Section 16, Article I of the Ohio Constitution, which requires that all courts be open for redress of a citizen's injury; Ethical Considerations 1–1 and 2–1 of the Ohio Code of Professional Responsibility, which state that all persons should have ready access to legal representation;

---

4. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph one of the syllabus.

5. *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, paragraph two of the syllabus.

6. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus.

7. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653, quoting Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398–399.

8. *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 151, 677 N.E.2d 308, citing *Collins*, supra, 73 Ohio St.3d at 70, 652 N.E.2d 653.

9. (1997), 116 Ohio App.3d 534, 688 N.E.2d 604.

and the common law, which recognizes the need for legal representation for the redress of wrongs.[10] We therefore held that the clarity element was established where the employee claimed that she was terminated for consulting an attorney.[11]

{¶ 10} Taylor now asks this court to extend the *Chapman* rule and hold that there is a clear public policy in favor of permitting an employee to file suit against his employer. For the following reasons, we decline to do so.

{¶ 11} We first note that an employee's need for access to legal representation does not necessarily entail the right to file suit against his employer. As VOA notes, the employee may consult an attorney to determine his rights and remedies under the law. Then, as in other contractual situations, he may weigh the benefits of filing suit against the possible adverse results of the decision to file suit. While we recognize that the respective bargaining positions may be different in the employment setting than in other business relationships, we nonetheless are persuaded that an employee may freely elect between filing suit and jeopardizing his employment on the one hand, and foregoing litigation and protecting the employment relationship on the other. In either case, the employee's right to know his legal rights and remedies is preserved under the *Chapman* holding.

{¶ 12} Moreover, we are persuaded that the enunciation of a clear public policy in favor of permitting an employee to file suit against his employer would disrupt the balance of the employer-employee relationship. As VOA argues, both the employer and the employee have an interest in employee evaluation. The employer should be able to freely inform the employee of performance problems so that the employee may work with the employer to correct those problems. If the filing of suit were a protected decision, we agree that there would be the danger that an employee, anticipating an adverse job action due to poor performance, would file suit against his employer as a "preemptive strike" against termination. Further, an extension of the *Chapman* holding to the actual filing of a lawsuit would place the employer in the unenviable position of having to continue in a relationship that has been tainted by the acrimonious nature of litigation.

{¶ 13} Finally, we note that where the General Assembly has identified situations in which the employee should be permitted to file suit with impunity, it has enacted statutory protections against termination.[12] A review of decisions

---

**10.** Id. at 542–543, 688 N.E.2d 604, citing *Riverside v. Rivera* (1986), 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466.

**11.** Id. at 544, 688 N.E.2d 604.

**12.** See, e.g., R.C. 4123.90 (protecting employee filing of a workers' compensation claim); R.C. 4112.02(I) (protecting employee filing of claim for discrimination on the basis of race, sex, and

from Ohio and other jurisdictions reveals that, in construing constitutional provisions substantially similar to the "Open Courts" provisions of the Ohio Constitution, the courts have found a violation of public policy only where the employee's claims were statutorily protected.[13]   In our view, this demarcation of the employee's right to seek redress against his employer strikes the proper balance between the employee's interest in protecting recognized rights and the employer's interest in maintaining a loyal and responsive workforce.

{¶ 14} We hold, therefore, that Taylor has not demonstrated the clarity element of his claim that VOA terminated him in violation of Ohio public policy. VOA also argues that Taylor failed to demonstrate the absence of an overriding business justification for the dismissal, but, in light of our holding with respect to the clarity element, this argument is rendered moot.   The assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

WINKLER, J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring separately.

{¶ 15} As the author of *Chapman*, I simply wish to state that I agree totally with the decision today.   The contrary result would extend *Chapman* too far and make the filing of a lawsuit almost a guarantee of continued employment.

{¶ 16} But employers are not free to fire an employee for filing a *justified* lawsuit.   What we hold today is that the filing of a lawsuit is not, *in itself,* a protected activity.   Taylor's appeal is based solely on the granting of summary judgment on his wrongful-discharge claim, which is based solely on his suing his employer—he did not appeal the summary judgment on all his substantive claims. Of course, if Taylor had had *other* legal grounds for the suit—such as sex or age discrimination—retaliation might also be a claim.

---

other factors);  and R.C. 4111.13(B) (protecting employee filing of suit to enforce minimum-wage laws).

**13.**   See *Takach v. Am. Med. Technology* (1998), 128 Ohio App.3d 457, 463–464, 715 N.E.2d 577, citing, inter alia,  *Beam v. IPCO* (C.A.7, 1988), 838 F.2d 242 (Wisconsin public policy not violated where the employee was terminated for suing, or threatening to sue, employer); *Deiters v. Home Depot, U.S.A., Inc.* (M.D.Tenn.1993), 842 F.Supp. 1023 (at-will employee terminated for suing employer could not claim violation of public policy);  *Boykins v. Hous. Auth. of Louisville* (Ky.1992), 842 S.W.2d 527 (no public policy prohibiting employer from terminating employee in retaliation for employee filing suit);  *Mitchell v. Deal* (1993), 241 Ill.App.3d 331, 182 Ill.Dec. 75, 609 N.E.2d 378 (Illinois public policy not violated where at-will employee was terminated for filing suit against employer for work-related injuries, where employee was not covered under workers' compensation system).

{¶ 17} We hold today that a wrongful-discharge claim may not be based *solely* upon being discharged for suing an employer.