MOSKOWITZ

v.

PROGRESSIVE INSURANCE COMPANY.

2004-Ohio-3100.]

Court of Common Pleas of Ohio,
Lake County.

No. 02CV000997.

Decided April 26, 2004.

Richard N. Selby, for plaintiff.

David A. Posner, for defendant.

EUGENE A. LUCCI, Judge.

## INTRODUCTION

{¶ 1} The court has considered (1) the defendant's motion for summary judgment, filed March 21, 2003; (2) the deposition transcript of Deborah A. Moskowitz, including exhibits, filed March 28, 2003; (3) the plaintiff's memorandum in opposition to the defendant's motion for summary judgment, including the portions of deposition transcripts of Tim McBurnie, Frank Holowach, David Nemec, and Susan Gray, filed April 11, 2003; (4) the defendant's reply to the plaintiff's memorandum in opposition, including portions of the deposition transcripts of David Nemec and Tim McBurnie, filed April 21, 2003; and (5) the defendant's memorandum of supplemental authority, filed September 18, 2003. The court finds that there is a genuine issue as to material fact, and the moving party is not entitled to judgment as a matter of law. Accordingly, the motion for summary judgment is denied.

## PROCEDURAL POSTURE

{¶ 2} Plaintiff Deborah Moskowitz filed a complaint against defendant Progressive Insurance Company on June 4, 2002, alleging that she was wrongfully discharged in violation of public policy in retaliation for her inquiry of her supervisor regarding the possibility of commencing litigation against the defendant in a matter unrelated to her employment. Plaintiff alleges that shortly after she made the inquiry, her employer set unattainable and unrealistic goals for her, to establish a bona fide reason for her discharge. Defendant filed a motion to dismiss the plaintiff's complaint or for more definite statement on August 2, 2002, which was denied on October 23, 2002. Defendant's answer was then filed on

November 21, 2002. On March 21, 2003, the defendant filed its motion for summary judgment, and the issues have been fully briefed by the parties.

## ISSUE

{¶ 3} The issues presented in this case are (1) whether a cause of action for wrongful discharge in violation of public policy exists when an insurance company terminates one of its employees, who is also a policyholder, in retaliation for the employee's inquiry of her supervisor regarding what the employer's response would be if the employee were to bring a non-job-related lawsuit against the employer based on a coverage issue on a claim arising under the insurance policy; and, if so, (2) whether a genuine issue of material fact exists as to whether or not the defendant discharged the plaintiff for making such an inquiry.

## LAW

### Summary Judgment

{¶ 4} Civ.R. 56(C) states:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 5} Thus, before summary judgment may be granted, it must be determined that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.[1]

{¶ 6} The main purpose of the summary judgment procedure is to enable a party to go behind the allegations in the pleadings and assess the proof in order to see whether there is a genuine need for trial. The remedy should be applied sparingly and only in those cases where the justice of its application is

---

1. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 667 N.E.2d 1197.

unusually clear. Resolving issues of credibility or reconciling ambiguities and conflicts in witness testimony is outside the province of a summary judgment.[2] In reviewing a motion for summary judgment, the court must construe the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party opposing the motion.[3]

{¶ 7} Under Ohio law, for purposes of ruling on a motion for summary judgment, a dispute of fact is "material" if it affects the outcome of the litigation. The dispute is "genuine" if it is manifested by substantial evidence going beyond the mere allegations of the complaint.[4]

{¶ 8} When a party moves for summary judgment and supports its motion with evidentiary documents, such as affidavits, depositions, answers to interrogatories, written admissions, transcripts of evidence, or written stipulations of fact, the party opposing the motion for summary judgment may not rest upon the mere allegations or denials in his pleadings but his response, by affidavit or as otherwise provided in Civ.R. 56(C), must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if otherwise appropriate, must be entered against him.[5]

*Wrongful Discharge in Violation of Public Policy*

{¶ 9} Generally, an employment-at-will relationship is terminable at the will of either party, for any reason. However, there are some exceptions to the at-will employment doctrine, including wrongful discharge in violation of public policy.[6] The elements of a claim for wrongful discharge in violation of public policy are:

"1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

"2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

"3. That plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

2. *Napier v. Brown* (1985), 24 Ohio App.3d 12, 24 OBR 33, 492 N.E.2d 847.

3. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

4. *Mount v. Columbus & S. Elec. Co.* (1987), 39 Ohio App.3d 1, 528 N.E.2d 1262.

5. *Citizens Ins. Co. v. Burkes* (1978), 56 Ohio App.2d 88, 10 O.O.3d 119, 381 N.E.2d 963; see, also, *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

6. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 67–68, 652 N.E.2d 653.

"4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)." [7]

{¶ 10} The clarity and jeopardy elements are questions of law, while the causation and overriding justification elements are questions of fact.[8]

{¶ 11} Two Ohio courts have addressed a claim for wrongful discharge where the employee was discharged for consulting a lawyer on an issue that would affect the employer's business interests and both have recognized a public policy exception to the at-will employment doctrine under those circumstances.[9] In *Chapman*,[10] the First District recognized a cause of action for wrongful discharge in violation of public policy when an employer terminates an employee for consulting an attorney regarding a potential personal injury claim against the employer's client. The *Chapman* court found evidence of a public policy, giving rise to a claim for wrongful discharge when terminated for consulting an attorney, in Section 16, Article I of the Ohio Constitution (requiring that courts be open for redress of a citizen's injury), the Code of Professional Responsibility, EC 1–1 and EC 2–1 (stating that there should be ready access to legal representation), common law (recognizing the need for legal representation for the redress of wrongs), the importance of the role of lawyers in the preservation of society, and "the fact that attorneys are key to obtaining relief from violations in the employment context." [11]

{¶ 12} Ohio courts have split on whether the public policy justifying an exception to the at-will-employment doctrine when an employee is discharged for consulting an attorney extends protection to employees that are discharged for filing a lawsuit against their employers or third parties affecting the business interests of the employer.[12] The Eighth District, noting that no such cause of action existed in other states, held that Section 16, Article I of the Ohio Constitution did not provide an exception to at-will employment when an employ-

---

7. Id., 73 Ohio St.3d at 69–70, 652 N.E.2d 653, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398–399.

8. Id., 73 Ohio St.3d at 70, 652 N.E.2d 653.

9. *Simonelli v. Anderson Concrete Co.* (1994), 99 Ohio App.3d 254, 650 N.E.2d 488; *Chapman v. Adia Services, Inc.* (1997), 116 Ohio App.3d 534, 688 N.E.2d 604.

10. *Chapman v. Adia Services, Inc.* (1997), 116 Ohio App.3d 534, 688 N.E.2d 604.

11. Id., 116 Ohio App.3d at 543, 688 N.E.2d 604.

12. *Jenkins v. Parkview Counseling Ctr., Inc.* (Jan. 3, 2001), Mahoning App. No. 99 CA 60, 2001 WL 15938; *Taylor v. Volunteers of Am.*, 153 Ohio App.3d 698, 2003-Ohio-4306, 795 N.E.2d

ee is discharged for suing a third party, which lawsuit affects the business interests of the employer.[13] In *Jenkins*, the Seventh District, citing *Chapman*, held that a cause of action for wrongful discharge exists when an employee is discharged for filing a lawsuit.[14] The employer in *Chapman* had argued that the employee was not fired for consulting an attorney but because she might bring a lawsuit. The *Chapman* court stated that there was no difference between firing an employee for consulting an attorney and firing an employee for filing a lawsuit.[15] One source of public policy that the First District relied upon in *Chapman* was the "Open Courts" provision of the Ohio Constitution. The First District noted that "[a] remedy would be illusory if citizens could lose their jobs for seeking it." [16] Based on this, the Seventh District held that "[t]he Court of Appeals clearly intended to include the right to sue an employer under the umbrella of public policy." [17] However, in *Taylor*, the First District declined to extend *Chapman*.[18] The First District noted that "an employee's need for access to legal representation does not necessarily entail the right to file suit against his employer." [19] It noted that *Chapman* protected the employee's right to know his rights and remedies, and the employee would therefore be able to freely elect between filing suit and jeopardizing his job and foregoing litigation and keeping his job.[20] The First District reasoned that allowing a wrongful-discharge claim under such circumstances would disrupt the balance of the employment relationship because such a cause of action would create a danger that an employee anticipating an adverse action by his employer would file suit as a "preemptive strike" against the employer and would force an employer to continue in a relationship that "has been tainted by the acrimonious nature of litigation." [21] The First District further reasoned that "where the General Assembly has

---

716; *Takach v. Am. Medical Technology* (1998), 128 Ohio App.3d 457, 715 N.E.2d 577; *Noble v. Brinker Internatl., Inc.* (S.D.Ohio 2001), 175 F.Supp.2d 1027.

13. *Takach v. Am. Medical Technology, Inc.* (1998), 128 Ohio App.3d 457, 715 N.E.2d 577.

14. *Jenkins v. Parkview Counseling Ctr., Inc.*, Mahoning App. No. 99 CA 60.

15. *Chapman v. Adia Services, Inc.* (1997), 116 Ohio App.3d 534, 540, 688 N.E.2d 604.

16. Id., 116 Ohio App.3d at 542, 688 N.E.2d 604.

17. *Jenkins v. Parkview Counseling Ctr., Inc.*, Mahoning App. No. 99 CA 60.

18. *Taylor v. Volunteers of Am.*, 153 Ohio App.3d 698, 2003-Ohio-4306, 795 N.E.2d 716.

19. Id., 153 Ohio App.3d 698, 2003-Ohio-4306, 795 N.E.2d 716, at ¶ 11.

20. Id.

21. Id.

identified situations in which the employee should be permitted to file suit with impunity, it has enacted statutory protections against termination." [22]

## DISCUSSION AND FINDINGS

{¶ 13} Defendant alleges that it is entitled to judgment as a matter of law because there is no public-policy exception to the at-will-employment doctrine for inquiring as to what the employer's response would be if the employee filed a lawsuit against the employer. Defendant further alleges that it is entitled to judgment as a matter of law even if such an exception exists because the plaintiff has not demonstrated that she was discharged for inquiring about the possibility of filing a lawsuit against the defendant.

{¶ 14} This court finds that there is a cause of action for wrongful discharge in violation of public policy when an employee is discharged by an insurance company for inquiring as to what the employer's response would be if the employee were to file a lawsuit against the employer under the insurance policy purchased from the employer by the employee.

{¶ 15} This court finds the reasoning of the *Chapman* [23] and *Jenkins* [24] decisions persuasive. *Jenkins* interprets *Chapman* as protecting an employee who was discharged for consulting an attorney because attorneys are such an essential part of our justice system, are often necessary to obtain a remedy, and contacting an attorney is often the preliminary step for gaining access to the courts. According to the *Jenkins* court's interpretation, *Chapman* recognized a public policy in favor of access to the courts that protects employees who consult attorneys because consulting an attorney is often a necessary step in obtaining a remedy. The threat of discharge would jeopardize this public policy because it would discourage employees from seeking a remedy through the courts. Therefore, it is only logical that such protection should extend to an employee who actually seeks to obtain his remedy through the courts.

{¶ 16} The *Taylor* court reasoned that an employee can freely choose between filing a lawsuit and jeopardizing his job and forgoing litigation and protecting his employment, and noted that *Chapman* protects the ability of the employee to determine his rights and remedies, enabling the employee to make an informed decision. [25] Under the *Taylor* court's interpretation of *Chapman*, what *Chapman* really protects is the ability of the employee to determine what rights and

---

22. Id., 153 Ohio App.3d 698, 2003-Ohio-4306, 795 N.E.2d 716, at ¶ 13.

23. *Chapman v. Adia Services, Inc.* (1997), 116 Ohio App.3d 534, 688 N.E.2d 604.

24. *Jenkins v. Parkview Counseling Ctr., Inc.*, Mahoning App. No. 99 CA 60.

25. *Taylor v. Volunteers of Am.*, 153 Ohio App.3d 698, 2003-Ohio-4306, 795 N.E.2d 716.

remedies he has available in order to enable him to choose between pursuing a claim against the employer and foregoing litigation. Thus, an employee must be protected in acquiring the information necessary to make this choice. The theory underlying *Chapman* is that protecting employees who consult attorneys is necessary because attorneys help employees to determine what their rights and remedies are, which enables them to decide whether or not to pursue a remedy through the courts.

{¶ 17} The *Jenkins* interpretation of the *Chapman* decision seems to be the better interpretation. The *Chapman* court specifically stated that there was no difference between firing an employee for consulting an attorney and firing an employee for filing a lawsuit.[26] Further, the concerns raised by the First District in *Taylor*[27] do not outweigh the importance of protecting employees who seek remedies through the courts. In regard to the possibility of employees abusing this protection and filing a lawsuit as a preemptive strike whenever they anticipate adverse actions by their employer, similar dangers exist even if *Chapman* protects only the consultation with an attorney and not the filing of a lawsuit, but the First District reaffirmed that decision.[28] Further, this concern addresses the causation element of a wrongful-discharge claim, not whether a clear public policy exists, and is a question of fact for the factfinder. As to the First District's concern that an employer will be forced to continue an employment relationship that has become unworkable, this may provide an overriding justification for discharge but should not preclude protection for employees in all situations. Finally, the First District notes that the General Assembly has enacted statutes in specific contexts protecting employees who file suit. This is not necessarily evidence of an intent not to protect employees in other situations. This could be interpreted as evidence of a more general public policy protecting employees who must file suit against their employers in order to enforce their rights. Further, the absence of a statute evidencing public policy does not preclude finding the existence of a public policy justifying a wrongful discharge claim.

{¶ 18} The definition of a wrongful-discharge claim adopted by the Ohio Supreme Court specifically states that public policy can be manifested in statutes, the Constitutions of the United States or Ohio, administrative regulations, or the common law.[29] In this case, a clear public policy exists in favor of protecting

---

26. *Chapman v. Adia Services, Inc.* (1997), 116 Ohio App.3d 534, 540, 688 N.E.2d 604.

27. *Taylor v. Volunteers of Am.*, 153 Ohio App.3d 698, 2003-Ohio-4306, 795 N.E.2d 716.

28. Id., 153 Ohio App.3d 698, 2003-Ohio-4306, 795 N.E.2d 716, at ¶ 11–13.

29. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653.

access to the courts. This public policy is manifested in Section 16, Article I of the Ohio Constitution. Further, this public policy would be jeopardized if employers were permitted to discharge employees who sought access to the courts, because the threat of discharge would discourage employees from seeking a remedy through the courts. Limiting the protection of employees, as the *Taylor* court indicates, to protecting the ability of employees to determine their rights and remedies in order to enable them to determine whether to seek access to the courts and risk losing their employment does not adequately protect the public policy favoring access to the courts. Employees are generally dependent upon their jobs and therefore would not be able to freely choose between pursuing a meritorious claim and risk losing their jobs or foregoing litigation and protecting their employment even if fully informed as to their rights and remedies. As the court in *Chapman* stated, "[a] remedy would be illusory if citizens could lose their jobs for seeking it." [30] In this case, the plaintiff's rights under her insurance policy would be meaningless if she can be fired for asserting her rights under the contract.

{¶ 19} However, even under the reasoning of the *Taylor* court, these facts state a cause of action for wrongful discharge. Part of understanding what rights and remedies are available includes understanding the consequences of pursuing such rights and remedies. Clearly, if the plaintiff had consulted an attorney, and the attorney had contacted the defendant and inquired as to what the defendant's policy was regarding employees who sue under their insurance policies, the plaintiff would have been protected under *Chapman*. If the underlying rationale of *Chapman* truly is that public policy protects an employee's efforts to determine what his legal rights and remedies are, as *Taylor* indicates, then public policy must protect an employee who seeks to determine what his rights and remedies are regardless of whether or not the employee obtains the services of an attorney to assist him. Otherwise, we are affording less protection to an employee who wants to understand his rights and remedies but is unable to consult an attorney. Therefore, the protection afforded by *Chapman* should extend to employees inquiring about an employer's policy regarding employees who sue the employer, as this information would better enable an employee to "freely elect between filing suit and jeopardizing his employment on the one hand, and foregoing litigation and protecting the employment relationship on the other." [31]

{¶ 20} Having expounded on existing Ohio case law touching on this issue, this court finds that there is a more compelling public policy implicated here than

---

30. *Chapman v. Adia Services, Inc.* (1997), 116 Ohio App.3d at 542, 688 N.E.2d 604.

31. *Taylor v. Volunteers of Am.*, 153 Ohio App.3d 698, 2003-Ohio-4306, 795 N.E.2d 716.

simply access to the courts. This court finds that, where an insurance company's at-will employee is one of its policyholders, it is against the public policy of Ohio for the insurance company to discharge the employee because the employee/policyholder indicates that she (or her husband) may litigate the adjustment of a claim. This court further finds that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy.

{¶ 21} The public policy is grounded not only in the constitutional right of access to courts (discussed above) but also the clear, well-established legal implication of good faith and fair dealing in every insurance contract, the prohibition on bad faith in first-party insurance dealings, the fiduciary relationship between insurer and insured, and the right to be free of extortion or coercion.

{¶ 22} Every contract, no less in insurance or consumer transactions, has an implied covenant of good faith and fair dealing to it.

"Ohio * * * imposes on [an] insurer a duty to act in good faith in * * * handling and payment of claims to its insured. * * * [The] tort of bad faith arises as a consequence of a breach of duty established by particular contractual relationship[s]. * * * In the area of contracts of insurance, [a] legal duty of good faith imposed by law on the insurer applies with equal force to the [insurer's] settlement of third-party claims against its insured as it does to those claims brought by [an] insured himself [or herself]. * * * [I]t is [the] duty of [the] insurance company to assess claims after * * * appropriate and careful investigation, and its conclusions should be the result of * * * weighing of probabilities in a fair and honest way." [32]

"In every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. This covenant encompasses an obligation on behalf of the insurer to accept reasonable offers of settlement in a prompt fashion. The insured defendant, for his part, both fulfills his contractual duty and protects his own interest by cooperating fully with his insurer. If the insurer causes undue delay in either settlement of a claim or in bringing a case to trial, it may constitute a breach of the implied covenant of good faith." [33]

"[An insurer] has a fiduciary responsibility toward its insured to act in good faith toward its insured in carrying out its duties under the contract. * * *

---

**32.** *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228.

**33.** *Miller v. Gunckle* (Dec. 11, 2000), Butler App. No. CA2000-02-026, 2000 WL 1818543. See, also, *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315.

"[A] breach of fiduciary duty in the context of an insurer/insured relationship arises when the insurer fails to perform under the contract or unreasonably refuses to act in a prompt manner in performing its contractual duties." [34]

{¶ 23} Extortion or coercion are crimes under Ohio law. Coercion, a misdemeanor of the second degree, is defined as follows:

"No person, with purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice, shall do any of the following: * * * (2) Utter or threaten any calumny against any person; (3) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, to damage any person's personal or business repute, or to impair any person's credit; * * * (5) Take, withhold, or threaten to take or withhold official action, or cause or threaten to cause official action to be taken or withheld." [35]

{¶ 24} Extortion, a felony of the third degree, is defined as follows:

"No person, with purpose to obtain any * * * valuable benefit * * * shall * * * (4) Utter or threaten any calumny against any person; (5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit." [36]

{¶ 25} Construing the facts in the light most favorable to the plaintiff in this case, the defendant, a provider of insurance products and services, is in a position to leverage its superior position as the employer to coerce or extort (crimes under Ohio statutes) its employee/customer (a claimant) to accept a diminished adjustment of her claim (in violation of its duty of good faith and fair dealing and its fiduciary capacity) to avoid involuntary termination of her employment.

{¶ 26} An involuntary termination of employment is usually accompanied by calumny, ridicule, and damage to reputation. The insurer is in a position to exert pressure to accept a lesser settlement of the claim, a valuable benefit to the insurer, where a claimant would otherwise not be so pressured if she were not employed by the insurer. Such a situation violates basic principles of free enterprise by introducing coercion and extortion into the economic transaction.

{¶ 27} Essentially, the insurer, which holds a contractual monopoly over its employee and insured, is in a position to unfairly tie-in the employment contract

---

**34.** *Red Head Brass, Inc. v. Buckeye Union Ins. Co.* (1999), 135 Ohio App.3d 616, 735 N.E.2d 48.

**35.** R.C. 2905.12.

**36.** R.C. 2905.11.

with the insurance contract, so as to be able to say to its policyholder, "Take it or leave it (the settlement) or you or your spouse is fired."[37] The employment discharge under the circumstances in this case could be viewed as a pre-emptive firing of an at-will employee to prevent acrimony over the insurance claims-adjustment process involving others who are similarly situated.

{¶ 28} Our society and public policy favor financial responsibility in the form of insurance. An insurance contract would be illusory and meaningless if employees could lose their jobs for expressing dissatisfaction over a settlement offer or adjustment action. An employee of an insurance company should not have to choose between potential litigation of an insurance claim and keeping her job. The employee purchased an insurance contract, including all of the benefits attendant to it, such as prompt and reasonable settlement of claims in good faith. Tying in the employment contract to the insurance contract is unconscionable and jeopardizes the public policy of Ohio.

{¶ 29} Generally, this public-policy exception to at-will employment may apply to any situation where the employer holds a dual relationship (with its employee) as seller and the claimant holds a dual relationship (with the employer) as buyer. However, this court declines to state that this public-policy exception would apply to any suit by an employee concerning any non-job-related matters. In the insurance context of this case, the employee/insured must deal with the employer/insurer, and the dealings must be shrouded in good faith without any tie-in between the dealings. If a tie-in between the employment contract and the insurance contract were permitted under the circumstances in this case, a deleterious message would be sent to the insurer's other employees/policy holders, in violation of clear public policy.[38] Insurers who occupy a dual capacity as employer/insurer must be cautious of tying in the employment and insurance contracts.[39]

{¶ 30} Defendant alleges that the plaintiff cannot demonstrate that she was discharged because of her inquiry about the possibility of filing a lawsuit

---

37. In interstate commerce, monopolistic tie-ins are violative of the federal antitrust laws. *Mission Hills Condominium Assn. M–1 v. Corley* (D.Ill.1983), 570 F.Supp. 453; *United States Steel Corp. v. Fortner Enterprises, Inc.* (1977), 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80; *Sargent–Welch Scientific Co. v. Ventron Corp.* (C.A.7, 1977), 567 F.2d 701; *N. Pacific Ry. Co. v. United States* (1958), 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545; see, also, Section 1, Title 15, U.S.Code.

38. The court speculates that a significant number of Progressive's employees are also Progressive's insureds.

39. This court is aware that some banks and other lending institutions will not permit their employees to be loan customers, to avoid the appearance of conflicting duties and acrimony in the event the loan must go into collection administration.

against the defendant and offers evidence to show that the plaintiff was discharged for performance-related reasons. However, the plaintiff has countered with evidence that the defendant's asserted reasons for discharge are pretextual. This is sufficient to defeat a motion for summary judgment. What remains for the factfinder are the causation and overriding justification elements.

## ORDER

{¶ 31} Construing the evidence most strongly in favor of the plaintiff, it appears that there is a genuine issue of material fact and the defendant is not entitled to judgment as a matter of law. Therefore, the defendant's motion for summary judgment is denied.

{¶ 32} IT IS SO ORDERED.

Judgment accordingly.

