OPINION
{¶ 1} Appellant, Augustin Jokic ("Jokic") appeals the Lake County Court of Common Pleas entry of summary judgment in favor of appellee, State Automobile Mutual Insurance Company ("State Auto").
 {¶ 2} The relevant background facts are as follows. Jokic purchased a homeowners' policy of insurance ("policy"), from State Auto with effective dates of coverage of May 11, 1993 to May 11, 1994, upon an annual renewal basis. The policy was in effect during the period relevant to this case. On January 16, 1998, Jokic's neighbors, Paul Andolsek, and Mary Andolsek ("the Andolseks"), filed a lawsuit against him alleging that Jokic "engaged in a course of conduct" that involved "bottles of paint being broken against the property known as Villa Rosa Pizza; nails being thrown onto the parking lot * * *; repetitive, harassing phone calls to * * * Villa Rosa Pizza; as well as, offensive and obscene verbal and physical threats and/or gestures to Plaintiffs." The Complaint stated claims for trespass, invasion of privacy, infliction of emotional distress, and tortious inference with business. The Complaint further alleged that Jokic committed these acts intentionally, maliciously, willfully, wantonly, offensively, unreasonably, and/or negligently.
 {¶ 3} In his deposition in the case sub judice, Jokic stated that he called the Bud Howell Insurance Agency ("Agency") to ask about whether there would be "insurance coverage, under the policy, if [he] [was] sued." Jokic stated that the employee with whom he spoke said he did not have coverage, and that such coverage would cost extra. Jokic requested that the Agency forward him a copy of the policy. Sometime around January 22, 1998, Jokic contacted the Agency again to renew his request for a copy of the policy. He then asked for the address of State Auto's main office on Pearl Road. Alleging language problems, in using the telephone, Jokic decided to go in person to State Auto's Pearl Road Office. According to Jokic, an employee at that office indicated that she would obtain a copy of his policy and mail it to him. Jokic stated that he told her that he was being sued for $7.25 million dollars. Jokic claims she instructed him to obtain his own attorney, and if he won the lawsuit, the insurance company would cover up to $300,000 (the limits of his policy). Jokic's daughter, Sandra Fakult ("Fakult"), also stated in her deposition that she called State Auto sometime around the last week of January 1998. She read portions of the Andolseks' Complaint over the phone to the employee. Fakult testified that the employee told her that she would file a claim and send a copy of Jokic's policy to him. As of February 24, 1998, Fakult had still not received a copy of the policy and again called State Auto. She spoke with a claims supervisor over the phone and read to him the allegations in the Complaint and was told there was no coverage available if intentional conduct was alleged, even if negligent conduct was alleged in the same sentence. She stated that she was instructed that if Jokic won the lawsuit, he could then file a claim for fees to be reimbursed.
 {¶ 4} Jokic alleges that in reliance on the responses both he and his daughter received from State Auto and the Agency, of no coverage, he ceased all attempts to get a copy of the policy. In April of 1998, Jokic received a letter from his attorney Dana Rose ("Rose"), informing him that insurance companies do not generally afford coverage for claims alleging malicious conduct. In the letter, Rose also stated it was unlikely that State Auto would defend him, but it might be worth trying. Jokic asserts that this letter, in essence, confirmed what he and Fakult had been told by State Auto, that there would be no coverage or defense available under the policy.
 {¶ 5} The original complaint filed by the Andolseks against Jokic on January 16, 1998, was voluntarily dismissed pursuant to Civ.R. 41(A)(1). The complaint was later refiled by the Andolseks against Jokic on January 19, 1999, essentially setting forth the same allegations as before. The matter eventually went to trial, and concluded with a jury verdict in Jokic's favor on November 4, 1999. The judgment was then appealed by the Andolseks, and affirmed by the Eight District Court of Appeals. Jokic alleges that he expended more than $200,000 in attorney fees defending the lawsuit.
 {¶ 6} In the summer of 2000, Jokic was involved in an unrelated car accident matter. Jokic's legal counsel at that time expressed surprise that State Auto did not defend Jokic in the Andolseks' lawsuit. As a result, Jokic decided to investigate the matter further and renewed his request for a copy of the policy. State Auto complied and sent a copy of the policy, by overnight mail, on June 29, 2000. On January 17, 2001, Jokic, sent correspondence to State Auto, regarding his allegations of the conduct of the Agency and State Auto personnel relating to the Andolsek lawsuit, and its failure to defend.
 {¶ 7} On December 3, 2001, Jokic filed a Complaint for Declaratory Judgment against State Auto, under his policy, seeking reimbursement of his legal fees and other damages, for State Auto's failure to defend him in the Andolsek lawsuit. The lawsuit was voluntarily dismissed on April 10, 2003, and refiled on June 11, 2003. December 2, 2003, State Auto filed a motion for summary judgment, and submitted a brief and affidavits in support of its motion. April 15, 2004 Jokic filed a brief in opposition to State Auto's motion and supporting affidavits; thereafter, State Auto filed a reply brief.
 {¶ 8} On July 12, 2004, the trial court granted State Auto's motion for summary judgment. The trial court concluded that Jokic could not prevail under any theories of breach of contract. The court found that State Auto was entitled to judgment on the issue of prompt notice. It held that State Auto was entitled to judgment on the issues of breach of contract and breach of the duty to defend because no duty under the contract, including the duty to defend, existed under the circumstances. It further found that State Auto was entitled to judgment on Jokic's claims of unjust enrichment, promissory estoppel, waiver, and bad faith. Jokic filed a timely notice of appeal and has now set forth the following sole assignment of error:
 {¶ 9} "The trial court erred by granting defendant-appelle's motion for summary judgment."
 {¶ 10} In order for a summary judgment to be granted, the moving party must prove:
 {¶ 11} "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385.
 {¶ 12} The Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296, that: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the recordwhich demonstrate the absence of a genuine issue of fact on amaterial element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.) Material facts are defined as facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner (1993), 67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,248. To ascertain what constitutes a genuine issue, the court must resolve whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law.Turner at 340.
 {¶ 13} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ. R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. TheBrown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 14} In his appeal Jokic contends that the trial court erred in its finding that as a matter of law, State Auto had no duty to defend under the insurance contract.
 {¶ 15} The duty to defend in Ohio arises at the time a complaint is filed. An insurer's duty is based solely on the claims arguably or potentially stated against the insured in the complaint. The construction of an insurance contract is a matter of law. Nationwide Mut. Ins. Co. v. Eckmeyer (2001),145 Ohio App.3d 753, 756. In construing an insurance contract, a court should attempt to determine the intention of the parties and, if the language of the policy is unambiguous, it should be enforced as written. Id.
 {¶ 16} In Ohio, an insurer has an absolute duty to assume the defense of the action, where the underlying complaint states a claim which is potentially or arguably within the policy coverage. Cf. Sanderson v. Ohio Edison Co. (1994),69 Ohio St.3d 582, at paragraph one of the syllabus.
 {¶ 17} In the case sub judice, the State Auto Policy provided to Jokic states, in pertinent, part as follows:
 {¶ 18} "Coverage E. Personal Liability:
 {¶ 19} If a claim is made or suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies we will:
 {¶ 20} "1. Pay up to our limit of liability for the damages for which the insured is legally liable; and
 {¶ 21} "2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent * * * [.]
 {¶ 22} Section ll-Conditions
 {¶ 23} "Duties after loss. In case of an accident or occurrence the insured will perform the following duties that apply. You will help us by seeing that these duties are performed:
 {¶ 24} "a. Give written notice to us or our agent as soon as practical, which sets forth:
 {¶ 25} "(1) The identity of the policy and insured;
 {¶ 26} "(2) Reasonable available information on the time, place, and circumstances of the accident or occurrence; and
 {¶ 27} "(3) Names and addresses of any claimants and witnesses;
 {¶ 28} "(b) Promptly forward to us every notice, demand, summons or other process relating to the accident or occurrence * * *[.]"
 {¶ 29} In its motion for summary judgment, State Auto claimed that Jokic's claim was barred by late notice.
 {¶ 30} In Ferrando v. Auto-Owners Mut. Ins. Co.,98 Ohio St.3d 186, 2002-Ohio-7217, at ¶¶ 89, 90, the court set forth a two-part test for evaluating whether prompt-notice provisions have been breached in underinsured motorist cases. The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. Id. at ¶ 90. This determination is based on whether the insurer received notice within a reasonable time in light of all the surrounding circumstances. Id. If the insurer received notice within a reasonable time, the notice inquiry ends, the notice provision was not breached, and coverage is not precluded. Id. If the insurer did not receive reasonable notice, inquiry must be had whether the insurer was prejudiced. Id. "Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut." Id.
 {¶ 31} Under Ohio law, a provision in an insurance policy which requires prompt notice to the insurer of an accident, occurrence or a loss requires notice within a reasonable time inlight of all the surrounding facts and circumstances. Ruby v.Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159, syllabus (Emphasis added.); cf. Patrick v. Auto-Owners Ins. Co. (1982),5 Ohio App.3d 118, 119. This rule has been extended by case law to include insurance policies which place a duty on the insured to notify his insurer of a potential claim as soon as practicable. West American Ins. Co. v. Hardin (1989),59 Ohio App.3d 71, 73; cf. Zurich Ins. Co. v. Valley Steel Erectors
(1968), 13 Ohio App.2d 41, 43-44. Generally, the question of whether notice was timely is one for the factfinder. ChampionSpark Plug Co. v. Fid. Cas. Co. of New York (1996),116 Ohio App.3d 258, 263. However, where the facts are not in dispute, the question of timely notice may be resolved as a matter of law. Id. Unreasonably delay gives rise to a presumption of prejudice to the insurer, and the claimant bears the burden of rebutting this presumption. Cf. Ruby, supra, at 161.
 {¶ 32} Here, it is undisputed between the parties that Jokic failed to provide written notice, and documentation of the Andolsek lawsuit to State Auto until after the case was concluded. In its judgment entry granting summary judgment, the court found that the late written notice provided by Jokic was unreasonable, and therefore, pursuant to Ruby, supra, was presumed to have prejudiced State Auto. The court further held that State Auto provided evidence of actual prejudice as well.
 {¶ 33} Jokic argues that he provided oral notice to State Auto and his delay of written notice to them was excusable under the circumstances of the case. In essence, he maintains that a question of fact for the jury exists with regard to the reasonableness of his oral notice and the delay in written notification. Jokic further claims that State Auto breached its fiduciary duty to him, that he relied upon the statements by the Agency personnel and State Auto employees, that there was no coverage available to him.
 {¶ 34} It is well-established in Ohio that liability and negligence will not lie in the absence of a duty owed by the defendant. Gelbman v. Second Natl. Bank of Warren (1984),9 Ohio St.3d 77, 78. Regarding the actions of insurance agents, courts in Ohio have held that an insurance agent has a duty to exercise good faith and reasonable diligence in advising the customer who relies on the agency's expertise. Cf. FirstCatholic Slovak Union v. Buckeye Union Ins. Co. (1986),27 Ohio App.3d 169. "Every contract, no less in insurance or consumer transactions, has an implied covenant of good faith and fair dealing to it." Moskowitz v. Progressive Ins. Co.,128 Ohio Misc.2d 10, 2004-Ohio-3100, at ¶ 22. In Ohio, an insurance company has a fiduciary responsibility toward its insured to act in good faith toward its insured in carrying out its duties under the contract. Red Head Brass, Inc. v. Buckeye Union Ins. Co.
(1999), 135 Ohio App.3d 616, 632. Therefore, a breach of fiduciary duty arises, "when the insurer fails to perform under the contract or unreasonably refuses to act in a prompt manner in performing its contractual duties." Id.
 {¶ 35} "`Waiver of conditions as to immediate written notice of an accident, furnishing proofs of loss, and similar notices, may be effectively accomplished through the words, acts, or conduct of an authorized agent of the insurer, and whether or not such waiver has taken place is generally a question of fact for the jury.'" Bufford v. Beacon Ins. Co., (Dec. 20, 1991), 7th Dist. No. 90 C.A. 112, 1991 Ohio App. LEXIS 6295, at 6. (Citation omitted.).
 {¶ 36} In support of his opposition to the summary judgment motion, Jokic provided statements from his deposition and the deposition of Fakult. Both Jokic and Fakult stated that State Auto advised them that there was no coverage for the allegations in the Complaint of the Andolsek lawsuit, and that Jokic was instructed to hire his own counsel, but that he would be reimbursed if he prevailed on the lawsuit for attorney fees. Further, they stated that upon multiple requests for a copy of the policy, none was furnished to them by State Auto until June of 2000.
 {¶ 37} Jokic also presented the affidavit of Wayne Rasmussen ("Rasmussen") insurance consultant, and expert witness. In his affidavit, Rasmussen stated that based upon the facts as provided to him by Jokic, the claim by Jokic should have been honored, both initially, and after the conclusion of the Andolsek lawsuit. Rasmussen stated it is the standard in the insurance industry to accept the word of an insured. In this case, the matter was handled, in effect, by denying the claim out of hand without even seeing the lawsuit. Rasmussen maintained that had a claim notice been made it was highly likely the adjuster would have asked for the suit, and also highly probable that a defense would have been provided. Rasmussen's affidavit stated * * * [e]ven though written submissions of a claim is indicated as being required, it is standard and normal in the Insurance Industry to require only phone reports by an insured."
 {¶ 38} The following colloquy took place in the deposition of Jack Halada ("Halada"), claims manager for the Cleveland Branch Office of State Auto:
 {¶ 39} "[Counsel for Jokic]: Assuming Mr. Jokic's testimony is a true and accurate description of the communication on that day when he went out there [to the Pearl Road State Auto Office], was the * * * employee's response to [Jokic] proper?
 {¶ 40} "Halada: No."
 {¶ 41} Halada further stated that assuming the statements of Jokic were true, the employee should have referred Jokic to someone in the claims department[.]
 {¶ 42} In its judgment entry granting summary judgment, the court found that Jokic's alleged oral notice in 1998, did not satisfy the terms of the insurance contract, and that Jokic further failed to provide written notice as soon as practical. The court found Jokic's argument that he had no knowledge of potential coverage to be "disingenuous."
 {¶ 43} We conclude that in reaching its decision, the trial court clearly weighed the testimony. In this instance, the court indulged in trying issues of fact rather than determining whether triable issues of fact existed. Based upon the evidence submitted, construing the foregoing in a light most favorable to Jokic, as required under Civ.R. 56(C), the question of breach of fiduciary duty, and the whether the notice provided by Jokic was reasonable given the circumstances is one of material fact that cannot be resolved on summary judgment. See, Lewis v. Kizer,
3rd Dist. No. 17-03-05, 2003-Ohio-4253.
 {¶ 44} State Auto argues that policy requirements of written notice are valid and enforceable and failure to comply with such requirements precludes a claim by Jokic for coverage. However, State Auto's reliance on Grange Mut. Cas. Co., v. Smock, 11th Dist No. 2000-G-2293, 2001-Ohio-4335, and Helman v. HartfordFire Ins. Co. (1995), 105 Ohio App.3d 617, is misplaced. The issue in Helman centered upon Helman's undisputed belief from the onset of litigation that he was covered under polices, while in Grange, no notice was given to the insurance company of any potential claim. In the case at bar, Jokic contends that oral notice was given, and in reliance upon being told that he had no coverage, he proceeded to defend the lawsuit at his own expense.
 {¶ 45} Based upon the foregoing, the trial court erred in granting State Auto's motion for summary judgment. Jokic's sole assignment of error is with merit. The judgment of the Lake County Court of Common Pleas is hereby reversed and the matter is remanded for further proceedings consistent with this opinion.
O'Niell, J., concurs.
Ford, P.J., concurs in judgment only.